Amanda Sylvia THOMPSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–99–00855–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 15, 2001.

James Butler, Steven Lieberman, Houston, for appellants.

Dan McCroy, Houston, for appellees.

Panel consists of YATES, WITTIG, and FROST, JJ.

**OPINION**

FROST, Justice.

Appellant, Amanda Sylvia Thompson, entered a plea of guilty to the misdemeanor offense of violating a City of Houston ordinance requiring an "entertainer" employed by sexually oriented enterprises to conspicuously display a permit upon her person. *See* HOUSTON, TEX., CODE § 28–256(a) (2000). The trial court accepted her plea, found her guilty, assessed punishment at two days' confinement in the Harris County Jail, and imposed a fine of $100. In eight points of error, she alleges the trial court erred in entering judgment because the county court at law lacked jurisdiction over the case and because the information was fundamentally defective. We reverse and order the information dismissed.

### BACKGROUND AND PROCEDURAL HISTORY

The State charged appellant with violating chapter 28 of the Code of Ordinances of the City of Houston. The information stated, in relevant part:

> AMANDA SYLVIA THOMPSON ... did then and there unlawfully while an entertainer in a sexually oriented enterprise, namely, TROPHY CLUB, an adult cabaret ..., and having a duty, pursuant to Section 28–25(a) of the Code of Ordinances of the City of Houston, while acting as an entertainer on the premises of the aforesaid sexually oriented enterprise, to conspicuously display upon his [sic] person at all times his [sic] personal card ... pursuant to Section 28–254 of the Code of Ordinances of the City of Houston, did fail to conspicuously display upon his [sic] person at all times his [sic] personal card while acting as an entertainer on the premises of TROPHY CLUB.[1]

Appellant filed a motion to quash the information, arguing the same issues she now raises on appeal: (1) only the municipal court had original jurisdiction over the case; (2) the information was fundamentally defective in failing to allege all the material elements of the offense, including (a) a culpable mental state and (b) manner of violating the ordinance; and (3) the failure to allege all elements of the offense provided inadequate notice such that appellant could not properly prepare her defense or avoid subsequent prosecution for the same offense. The trial court initially denied the motion but entertained argu-

ments to reconsider its ruling shortly before trial. The trial court, however, did not change its ruling, and appellant subsequently entered a guilty plea to the charge.

### STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to quash an information, we apply an abuse of discretion standard. *See Thomas v. State*, 621 S.W.2d 158, 163 (Tex. Crim.App.1981); *State v. Kinkle*, 902 S.W.2d 187, 189 (Tex.App.—Houston [14th Dist.] 1995, no pet.). A trial court abuses its discretion if it acts without reference to guiding rules and principles, or acts arbitrarily or unreasonably. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex.Crim.App.1993); *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990).

### JURISDICTION

In her first two points of error, appellant asserts the trial court erred in denying her motion to quash because the trial court lacked jurisdiction. Appellant contends the information "failed to allege a violation of state law or otherwise allege[ ] a violation of law which vested the court with jurisdiction." In support of this contention, appellant raises three arguments.

### Judicial Notice of Ordinance

In her first argument, appellant contends the trial court could not determine whether it had jurisdiction over this case because the State neither asked the trial court to take judicial notice of the

---

1. The information does not cite the correct ordinance section number for the offense charged. The information mistakenly refers to "Section 28–25(a)" as the section providing the entertainer's duty to display her personal card. However, no section 28–25(a) exists. Section 28–256(a) provides an entertainer's duty to conspicuously display her personal card: "(a) Each ... entertainer shall conspic-

uously display his personal card upon his person at all times while acting as an entertainer or manager of or in an enterprise." § 28–256(a). Appellant neither objected to this error in the information nor filed a motion to quash raising this defect and, therefore, has waived her right to object to this defect on appeal. *See* TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp.2000).

ordinance nor offered a copy of the ordinance into evidence. Appellant contends that proof of the ordinance is essential because the State relied upon it to establish the court's jurisdiction. Under former Rule 204 of the Texas Rules of Criminal Evidence, proof of the ordinance at issue was essential because a reviewing court could not take judicial notice of the existence or terms of a city ordinance. *See Lange v. State,* 639 S.W.2d 304, 306–07 (Tex.Crim.App.1982); *Pollard v. State,* 687 S.W.2d 373, 374 (Tex.App.—Dallas 1985, pet. ref'd); *but see Dedonato v. State,* 789 S.W.2d 321, 325 (Tex.App.—Houston [1st Dist.] 1990), *aff'd,* 819 S.W.2d 164 (Tex. Crim.App.1991). However, under the current Texas Rules of Evidence, a court upon its own motion may take judicial notice of a municipal ordinance. Tex. R.Evid. 204. The record indicates the trial court took judicial notice of the ordinance in this case. Although the lower court did not address the jurisdictional issue, it indicated its familiarity with the specific provisions of the ordinance when it articulated its reasons for denying appellant's motion to quash. Accordingly, we reject appellant's first argument.

### Jurisdiction of County Criminal Court

■ In her second argument, appellant contends that because the information alleges an offense under a municipal ordinance, and not a state law, jurisdiction vests in the municipal court and not in the county criminal court at law. We find this argument is without merit.

"Jurisdiction vests only upon the filing of a valid indictment in the appropriate court." *Cook v. State,* 902 S.W.2d 471, 476 (Tex.Crim.App.1995). Generally, a municipal court has exclusive original jurisdiction over all criminal matters arising under municipal ordinances. Tex.Code Crim. Proc.Ann. art. 4.14(a)(1) (Vernon Supp.

2000). A municipal court's jurisdiction in criminal cases, however, is restricted to offenses punishable by money fine alone. *Id.* art. 4.14(a)-(c). A municipal court does not have exclusive original jurisdiction over violation of an ordinance punishable by confinement in jail or imprisonment. *Id.* at 4.14(c). It is the county court at law that has exclusive original jurisdiction of misdemeanors other than misdemeanors involving official misconduct and offenses punishable by a fine of $500 or less. Tex. Gov't Code Ann. § 26.045(a) (Vernon Supp. 2000).

A violation of a municipal ordinance regulating sexually oriented businesses is a Class A misdemeanor. *See* Tex.Loc. Gov't.Code Ann. § 243.010(b) (Vernon 1999). Punishment for a Class A misdemeanor includes a fine and/or confinement in jail for a term not to exceed one year. Tex.Pen.Code Ann. § 12.21 (Vernon 1994). Because a violation of a municipal ordinance regulating sexually oriented businesses is a Class A misdemeanor punishable by fine or confinement, jurisdiction vests with the county criminal court at law and not the municipal court. *See State v. Coleman,* 757 S.W.2d 127, 127 (Tex.App.— Houston [1st Dist.] 1988, pet. ref'd). Thus, the county criminal court at law was the appropriate court in which to prosecute appellant for the charged offense.

### Scope of Chapter 243 of Local Government Code

■ In her third argument, appellant contends the county criminal court at law lacks jurisdiction over the case because the ordinance falls outside the provisions of Chapter 243 of the Texas Local Government Code. Chapter 243 is the enabling legislation that permits municipalities to regulate sexually oriented businesses. Tex.Loc.Gov't.Code Ann. § 243.001 (Vernon 1999). Appellant maintains that

Chapter 243 limits the scope of a municipality's authority to regulate a sexually oriented business to its location and to the licensing of the business owner or operator, and thus concludes that Chapter 243 grants no authority to require an entertainer to obtain a license or permit. We disagree.

In enacting Chapter 243, the Texas legislature granted to municipalities broad powers to regulate sexually oriented businesses within the municipality. *Id.* § 243.001(b). The legislature expressly found that "the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." *Id.* § 243.001(a). In an effort to remedy this problem, the legislature authorized municipalities to adopt, by ordinance, regulations for sexually oriented businesses considered necessary to promote the public health, safety, or welfare of the community. *Id.* § 243.003(a). The legislature further expressed its intent that no provision of Chapter 243 "diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters." *Id.* § 243.001(b). While sections 243.006 and 243.007 of this chapter authorize a municipality to restrict or prohibit the location of a sexually oriented business and to require an owner or operator to obtain a license or permit to operate the business, they in no way restrict the municipality from regulating the conduct of employees of sexually oriented businesses. *See Haddad v. State,* 9 S.W.3d 454, 458 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Regulation of conduct may include the requirement that an employee acting as an entertainer in a sexually oriented enterprise hold a permit issued by the municipality. *See Jackson v. State,* 880

S.W.2d 432, 435 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

Because the information in this case was valid, filed in the appropriate court, and because the ordinance was properly enabled under Chapter 243 of the Local Government Code, the county criminal court at law had jurisdiction over the case. Therefore, the trial court did not abuse its discretion in denying appellant's motion to quash the information on appellant's jurisdictional complaint. Accordingly, appellant's first and second points of error are overruled.

### FUNDAMENTAL ERROR

In her third and fourth points of error, appellant asserts the information is fundamentally defective because it fails to allege all material elements of the offense. Specifically, appellant complains that the information is deficient because it fails to set forth a culpable mental state and fails to identify the manner in which appellant violated the ordinance. Appellant contends that because of these defects, she lacked the requisite notice to prepare her defense.

A fundamental defect in a charging instrument deprives the trial court of jurisdiction. *Ex parte Patterson,* 969 S.W.2d 16, 18 (Tex.Crim.App.1998). The failure to allege an element of the offense in the information is a defect of substance. *See* Tex.Code Crim.Proc.Ann. art. 27.08(1) (Vernon 1989); *Tobias v. State,* 884 S.W.2d 571, 578 (Tex.App.—Fort Worth 1994, pet. ref'd.) (citing *Studer v. State,* 799 S.W.2d 263, 268 (Tex.Crim.App.1990)). An information which is "flawed by a defect of substance but which purports to charge an offense is not fundamentally defective and, in the absence of a pretrial objection, will support a conviction." *Ex parte Patterson,* 969 S.W.2d at 19. However, in the face of a proper motion to quash, the information must state the elements of the

offense, leaving nothing to inference or intendment. *Green v. State*, 951 S.W.2d 3, 4 (Tex.Crim.App.1997).

### Omission of Culpable Mental State

Appellant timely filed a motion to quash the information complaining that the State failed to allege a culpable mental state in the information. At the hearing, appellant argued that by not quashing the information based on the omission of a culpable mental state and by not requiring the State to amend, the trial court was effectively holding that the charged offense was one of strict liability. The trial court specifically found that section 28–254 of the ordinance did not require a culpable mental state because the ordinance did not contain one. Therefore, the trial court reasoned, the information was not fundamentally defective in omitting a culpable mental state.

Appellant now argues that, although the ordinance does not specifically prescribe a culpable mental state, the Texas Penal Code mandates a culpable mental state as an element of the offense. Section 6.02 of the Texas Penal Code provides:

(a) Except as provided in Subsection (b), ... a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

(b) *If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.*

(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), ... intent, knowledge, or

recklessness suffices to establish criminal responsibility.

Tex.Pen.Code Ann. § 6.02 (Vernon 1994) (emphasis added).

If an offense does not contain a culpable mental state element, the offense is one of strict liability. *Aguirre v. State*, 978 S.W.2d 605, 607 (Tex.App.—El Paso 1998), *aff'd*, 22 S.W.3d 463 (Tex.Crim. App.1999). Strict criminal liability is based upon the principle that "a person who commits an act in violation of the law may be held criminally liable even though he might be innocent of any criminal intent." *Vaughan & Sons, Inc. v. State*, 737 S.W.2d 805, 818 (Tex.Crim.App.1987) (Teague, J., dissenting). In charging the accused with a strict liability offense, culpability is irrelevant and, thus, need not be alleged in the charging instrument. *See id.* If the individual commits the act, she is, *ipso facto*, held strictly criminally liable. *Id; Honeycutt v. State*, 627 S.W.2d 417, 421 n. 4 (Tex.Crim.App.1982).

In *Aguirre v. State*, the Texas Court of Criminal Appeals set out guidelines for determining whether a statute plainly dispenses with a culpable mental state as an element of a charged offense. 22 S.W.3d 463, 470–77 (Tex.Crim.App. 1999). In making this determination, a court must first consider whether the statute affirmatively states that the conduct is a crime though done without fault. *Id.* at 471. If so, the statute dispenses with a mental state requirement, and the offense is one of strict liability. *Id* . However, a statute's mere omission of a mental state cannot be construed to plainly dispense with one. *Id.* Instead, "the silence of a statute about whether a culpable mental state is an element of the offense leaves a presumption that one is."[2]

---

2. *Id.* at 472. In Texas, all offenses, are classified as crimes, a fact which supports the

general presumption against strict liability:

The ordinance at issue provides that "[e]ach manager or entertainer shall conspicuously display his personal card upon his person at all times while acting as an entertainer or manager of or in an enterprise." § 28–256. Section 28–256 does not provide an affirmative statement that its violation is a strict liability offense; rather, this ordinance is silent as to mental state.[3] Thus, in determining whether a culpable mental state is a required element of an offense under this ordinance, we begin with the presumption that culpability is required. *See Aguirre*, 22 S.W.3d at 472.

Next, we determine whether the ordinance manifests an intent to dispense with a culpability requirement by examining other attributes of the ordinance in light of a non-exhaustive list of suggested factors articulated in *Aguirre. See id.* at 470–77.

**(1) Language of the Statute.**

■■■ If any section of the statute prescribes a mental state while another section omits a mental state, we presume the legislature intended to dispense with a mental element in that section. *Id.* at 473. In this case, the "Division" regulating sexually oriented businesses is silent as to

mental state.[4] Thus, we do not presume the drafters of the ordinance intended to dispense with a culpable mental state as an element of an offense under section 28–256.

**(2) Nature of the Offense: *Malum Prohibitum* or *Malum in Se*.**

Criminal offenses are characterized as either *malum in se*, meaning "inherently evil" or *malum prohibitum*, meaning "prohibited evil." *Aguirre*, 22 S.W.3d at 473; *Tovar v. State*, 978 S.W.2d 584, 591 (Tex. Crim.App.1998). These distinctions are deeply rooted in American and English jurisprudence. *Malum in se* offenses traditionally include acts that are inherently immoral, such as murder, arson, or rape. BLACK's LAW DICTIONARY 971 (7th ed.1999). A *mala prohibitum* offense is defined as: "[a]n act that is a crime merely because it is prohibited by statute, although the act itself is not necessarily immoral." *Id.* at 971. Examples of *mala prohibita* offenses include speeding, illegal dumping of trash, and possession of a firearm while under a domestic restraining order. *State v. Houdaille Indus.*, 632 S.W.2d 723, 728 (Tex.1982); *Ex parte Weise*, 23 S.W.3d at

---

Texas penal law has not decriminalized strict liability offenses. Many are Class C misdemeanors, a conviction for which does not impose any legal disability or disadvantage. But the offenses are still crimes, and "the fact is that the person charged can be arrested on warrant like any ordinary criminal, forced to travel a long distance to attend the court, remanded in custody and imprisoned in default of payment of the fine." The choice of the legislative and executive branches of our government to classify all offenses as crimes, and to subject offenders to such procedural consequences, supports the general presumption against strict liability.
*Ex parte Weise*, 23 S.W.3d 449, 452 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd, pet. granted) (citations omitted).

**3.** Inexplicably, the court in *Aguirre* considered whether a statute explicitly makes a strict

liability offense a crime as both a threshold matter *and* as a feature to consider even *after* determining the statute is silent as to mental state. *Aguirre*, 22 S.W.3d at 472. Having already found no explicit culpability requirement in the ordinance at issue in this case, we need not again address this feature in determining whether there exists a manifest intent to dispense with a mental state requirement.

**4.** Chapter 28 of the Houston Code of Ordinances governs miscellaneous offenses and provisions. That chapter is further organized by Articles, within which are "Divisions," and within these "Divisions" are "Sections." Divisions 2 and 3 of Article VIII, of Chapter 28, govern permits and conduct of entertainers and contain no language of culpability. *See generally* Chapter 28.

453; *United States v. Emerson*, 46 F.Supp.2d 598, 612 (N.D.Tex.1999).

Offenses requiring a culpability element are normally considered *malum in se* while strict liability offenses are generally considered *malum prohibitum*. *See, e.g., Ex parte Weise*, 23 S.W.3d at 452. Although regulatory violations are often characterized as *malum prohibitum* offenses, the Texas Court of Criminal Appeals has analogized offenses under ordinances regulating sexually oriented businesses as being akin to public nudity, an offense common law classified as a *malum in se*. *Aguirre*, 22 S.W.3d at 477; *Ex parte Weise*, 23 S.W.3d 449, 452 ("strict liability offenses must be *malum prohibitum*. The opposite is not necessarily true, as illustrated by many regulatory crimes, such as drug violations. Although illegal dumping is *malum prohibitum*, that classification neither requires nor precludes strict liability."). This classification indicates that "entertaining," as that term is defined in the ordinance, without properly displaying a permit, is similarly a *malum in se* offense. *See Aguirre*, 22 S.W.3d at 477 (presuming that the offense of conducting a public nudity business within a thousand feet of a residence, church, school, etc. was *malum in se* ). This characterization favors interpreting an offense under ordinance 28–256 as requiring a culpable mental state. *See id.* at 475–77.

(3) **Subject of the Statute.**

 The court in *Aguirre* stated that the most important factor "in the more recent cases," for determining whether a statute manifests an intent to dispense with a mental element, is the subject of the statute. *Id.* at 473. Although strict criminal liability statutes are generally looked upon with disfavor, " 'public welfare offenses,' which offenses represent society's attempts to regulate nuisances that might affect or be detrimental to the general health, safety, and welfare of the citizenry" are a noteworthy exception. *Vaughan & Sons, Inc. v. State*, 737 S.W.2d 805, 818 (Tex.Crim.App.1987) (Teague, J., dissenting). Strict liability is traditionally associated with the protection of public health, safety, or welfare. *Aguirre*, 22 S.W.3d at 473. The Court of Criminal Appeals has upheld statutes imposing strict liability for a number of offenses affecting public health and safety, including driving while intoxicated, speeding, driving with a suspended license, air and water pollution.[5]

The State urges that the City enacted the ordinance in response to a "public emergency" and concomitant need to protect the public's health, safety, and welfare. However, like the ordinance in *Aguirre*, section 28–256 is not in the class of public-safety statutes generally found to impose strict liability. *See Aguirre*, 22 S.W.3d at 475 n. 47; *Aguirre*, 978 S.W.2d at 608 (listing public-safety strict liability offenses as including speeding, driving while intoxicated, air pollution, water pollution, and sale of adulterated meat); *Ex parte Weise*, 23 S.W.3d at 455 (finding that an illegal dumping statute required a culpable mental state of at least "recklessly" despite fact it was clearly intended to protect public health, safety, and welfare). In addition, the importance of any public health, safety, and welfare features of this ordinance diminishes considering the relatively low level of harm to the public ex-

5. *See, e.g., Am. Plant Food Corp. v. State*, 587 S.W.2d 679 (Tex.Crim.App.1979) (water pollution); *Owen v. State*, 525 S.W.2d 164 (Tex. Crim.App.1975) (driving while intoxicated); *Neill v. State*, 154 Tex.Crim. 549, 229 S.W.2d 361, 363 (1950) (sale of horsemeat for human consumption); *Neill v. State*, 225 S.W.2d 829, 830 (Tex.Crim.App.1949) (adulterated food); *Goodwin v. State*, 63 Tex.Crim. 140, 138 S.W. 399, 400 (1911) (speeding).

pected to flow from the act of "entertaining" without conspicuously displaying the requisite permit. *See Ex parte Weise*, 23 S.W.3d at 455.

### (4) Gravity of Expected Harm to the Public.

Generally, the more serious the consequences to the public, the more likely the legislature meant to impose liability without regard to fault, and vice versa. *Aguirre*, 22 S.W.3d at 471 n. 27 (citing 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW 343 n. 10 (2d ed.1986)).

Although the State argues that the ordinance is intended to protect the public from disease-spreading conduct, the State does not explain how a failure to conspicuously display a permit impacts the potential for spread of disease. The permit application process has no screening mechanism for disease. Moreover, permits issued to entertainers under the auspices of Chapter 28 do not disclose the existence of any diseases. *See* § 28–254. Given these facts, it seems unlikely that the mere display of a permit while "entertaining," no matter how conspicuous, would operate to protect public health by discouraging disease-spreading casual sexual acts. Thus, there appears to be no direct impact on the public health from an entertainer's failure to conspicuously display a permit.

Moreover, unlike the ordinance at issue here, each of the statutes underlying the aforementioned strict liability offenses protects unwitting and unwilling members of the public from the noxious and harmful behavior of others, in situations in which it would be difficult for members of the public to protect themselves, e.g. drunk and unsafe driving, hazardous pollutants, con-

taminated food, etc. In contrast, the patron of a sexually oriented entertainment enterprise who engages in the "disease-spreading conduct" thought by the State to be the target of this ordinance, presumably does so willingly and with full knowledge of the inherent risks of contracting sexually transmitted disease.

Given the lack of nexus between the conspicuous display of the permit and any direct impact on public health, we must conclude the harm to the public from an entertainer's failure to conspicuously display the requisite permit is not great. This finding further supports an interpretation that this ordinance requires a culpable mental state.

### (5) Severity of Punishment.

█ Strict liability is generally associated with civil violations that incur only a fine. *Aguirre*, 22 S.W.3d at 472; *Ex parte Weise*, 23 S.W.3d at 452. Conversely, if the offense is punishable by confinement, the presumption against strict liability strengthens. *Ex parte Weise*, 23 S.W.3d at 452.

The greater the possible punishment, the more likely fault is required. *Aguirre*, 22 S.W.3d at 475–76 (citing 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW 342 (2d ed.1986)); *Ex parte Weise*, 23 S.W.3d at 454. A violation of section 28–256 is punishable by fine and/or jail time for up to a year.[6] Although the adult businesses ordinance in *Aguirre* carried only a fine, the Court of Criminal Appeals found it to require a culpable mental state. *Aguirre*, 22 S.W.3d at 475–76. Therefore, we find possible confinement up to a year, for violation of the

---

**6.** A violation of a municipal ordinance regulating sexually oriented businesses is a Class A misdemeanor. TEX.LOC.GOV'T.CODE ANN. § 243.010(b) (Vernon 1999). Punishment for a Class A misdemeanor includes a fine and/or confinement in jail for a term not to exceed one year. TEX.PEN.CODE ANN. § 12.21 (Vernon 1994).

ordinance at issue here, is strong indicia that a culpable mental state is required. *Id.; Ex parte Weise,* 23 S.W.3d at 454 (finding the seriousness of possible punishment "to be a particularly weighty factor that militates against strict liability.").

(6) **Legislative History.**

The Texas legislature has found that "the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." TEX.LOCAL GOV'T CODE ANN. § 243.001(a) (Vernon 1999). As noted, Houston's sexually oriented business ordinances were enacted pursuant to this enabling legislation, presumably to address public health, safety, and welfare concerns. However, the State fails to point to any legislative history or other authority which supports its contention that the drafters of the ordinance intended to make an entertainer's failure to conspicuously display the requisite permit a strict liability offense.

(7) **Difficulty in Proving Mental State.**

■ The greater the difficulty in proving mental state, the more likely legislators intended to make the offense strict liability to ensure more effective law enforcement. *Aguirre,* 22 S.W.3d at 476. In light of the ordinance's stringent demand that each manager or entertainer "conspicuously display" the permit at all times, prosecutors would seemingly encounter relatively little difficulty in proving that an entertainer was aware that the requisite permit was not conspicuously displayed. To display a permit conspicuously, it must be striking and obvious to the eye so as to attract attention. This means the permit must be openly and prominently displayed, noticeable, and readily apparent to others. Common sense dictates that one who is not conspicuously displaying the requisite per-

mit would be aware of its absence or lack of prominence. Indeed, if a permit is required to be displayed conspicuously so that it will easily attract the attention of others, its presence or absence would be all the more apparent to the one charged with the duty to display it. Under these circumstances, a prosecutor likely would encounter minimal difficulty in proving that one who entertained without conspicuously displaying her permit did so "recklessly, knowingly, or intentionally." *See* TEX.PEN.CODE ANN. § 6.02 (Vernon 1994). This lack of difficulty in establishing a culpable mental state weighs in favor of requiring one. *See Aguirre,* 22 S.W.3d at 476–77.

(8) **Defendant's Opportunity to Ascertain the "True Facts."**

The very reasons that make proof of a culpable mental state a relatively simple task also enable an entertainer to quite easily ascertain the "true facts" as to whether she is conspicuously displaying the requisite permit on her person. *Cf. Aguirre,* 22 S.W.3d at 476–77 (finding that defendant *would* have difficulty in determining whether the place in which she was conducting business was within a prohibited range from one of the specified properties). As previously noted, if one is not displaying the permit in a manner that would draw attention, that fact would almost certainly be apparent to the entertainer. The entertainer's ability to easily ascertain the "true facts" favors the imposition of strict liability. *See id.* at 476 and n.52 (" 'The defendant's opportunity to ascertain the true facts is yet another factor which may be important in determining whether the legislature really meant to impose liability on one who was without fault because he lacked knowledge of these facts.' ") (quoting 1 WAYNE R. LAFAVE &

Austin W. Scott, Jr., Substantive Criminal Law 342 (2d ed.1986)).

#### (9) **Number of Prosecutions Expected.**

 The fewer the expected prosecutions for commission of an offense, the more likely the legislature meant to require prosecuting officials to delve into the issue of fault. *Id.* at 475–76, 476 n. 51. It is difficult to accurately predict the number of prosecutions reasonably expected under Chapter 28 of this ordinance, and the State has provided no guidance with respect to this factor.[7] Nothing in the record now before us relates to the matter. Consequently, like other courts confronted with a lack of data on this issue, we find the expected number of prosecutions for violations of the ordinance is a neutral factor in our analysis. *See Ex parte Weise,* 23 S.W.3d at 455.

 Having considered the relevant attributes of section 28–256 in light of the guiding rules and principles articulated by the Court of Criminal Appeals, we find the ordinance does not manifest an intent to dispense with a culpable mental state sufficient to rebut the presumption that one is required under Texas Penal Code sections 1.03 and 6.02. Thus, we conclude that a culpable mental state is an essential element of the offense. Because the information failed to allege a culpable mental state, it contained a defect of substance. This error, alone, provides sufficient basis to find the trial court erred in denying appellant's motion to quash the information. *Sanchez v. State,* 32 S.W.3d 687, 698 (Tex.App.—San Antonio 2000, pet. filed). Accordingly, we find the trial court abused its discretion in denying appellant's motion to quash. We now must determine if the trial court's error was harmless.

#### EFFECT OF SUBSTANTIVE DEFECT

 Prior to 1985, the Texas Constitution classified the omission of an offense's elements from an indictment as a fundamental defect, which deprived the court of jurisdiction. *Ex parte Patterson,* 969 S.W.2d 16, 18 (Tex.Crim.App.1998); *Studer v. State,* 799 S.W.2d 263, 266–67 (Tex.Crim.App.1990); *Huynh v. State,* 928 S.W.2d 698, 702 (Tex.App.—Houston [14th Dist.] 1996, no pet.) ("[B]efore article 1.14(b), case law held that a defect of substance caused a charging instrument, specifically an indictment or information, to be void and failed to confer jurisdiction on the court."). In 1985, Texas adopted constitutional amendments designed to reduce the frequency with which criminal convictions were reversed due to defective indictments. *Studer,* 799 S.W.2d at 268–71. The Texas legislature amended the Texas Code of Criminal Procedure in conjunction with those constitutional amendments. *Id.; see* art. 1.14(b). Those amendments eliminated certain insufficiencies in the indictment from the list of fundamental defects that deprived trial courts of jurisdiction. *Studer,* 799 S.W.2d at 271–73. The failure to allege an essential element, such as culpable mental state, is no longer a fundamental defect, but is instead a defect of substance which must be raised before trial, or the right to complain of the defect is waived. *Id.* at 268; *Limas v. State,* 941 S.W.2d 198, 201–02 (Tex.App.—Corpus Christi 1996, pet. ref'd).

 Thus, article 1.14(b) changed the *effect* of substantive defects from automatically rendering a judgment void, and thus reviewable at any stage, to requiring

---

**7.** The State is in the best position to know the frequency with which violations of this ordinance occur or to evaluate how imputing a culpability requirement may affect the number of prosecutions.

a timely pretrial objection to preserve appellate review and to avoid the judgment. *See Ex parte Patterson,* 969 S.W.2d 16, 19 (Tex.Crim.App.1998). Therefore, the prearticle 1.14(b) cases that discuss the effect of substantive defects are controlling here. *See Huynh,* 928 S.W.2d at 701–02. If an indictment or information is not amended to correct defects of substance to which the defendant timely objects, the charging instrument must be dismissed. *See, e.g., Fisher v. State,* 887 S.W.2d 49, 56 (Tex.Crim.App.1994), *overruled on other grounds, Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997) (stating the defendant "will undoubtedly be entitled to a new trial based upon trial error for potentially any number of issues, including lack of notice for due process purposes"). Consequently, where the State fails to amend an indictment alleging a requisite mental state, and the defendant timely objects to the omission, the trial court's failure to quash the indictment has been, and still is, treated as error harmful under any harm analysis, *i.e.* reversible *per se.* *See Labelle v. State,* 720 S.W.2d 101, 106 (Tex.Crim. App.1986) ("[A] finding that an indictment which fails to allege the requisite elements of an offense results in reversible error per se."); *Sanchez v. State,* 32 S.W.3d at 700 (stating that timely objected to defects of substance in an indictment "[u]nder any standard of review applied ... would be harmful.").

Accordingly, points of error three and four are sustained. Our finding renders consideration of appellant's remaining points of error unnecessary.

The judgment of the trial court is reversed and the case remanded with instructions to dismiss the information.