The STATE of Texas, State,

v.

Osama M. ABDALLAH, Appellee.

No. 2–01–165–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 25, 2001.

Tim Curry, Criminal District Attorney, Charles Mallin, Assistant Criminal District Attorney and Chief of the Appellate Section, Edward L. Wilkinson and Jakob Banks, Assistant Criminal District Attorneys, Fort Worth, for Appellant.

Steven H. Swander, Fort Worth, for Appellee.

Panel B: DAUPHINOT, HOLMAN, and WALKER, JJ.

## OPINION

HOLMAN, Justice.

The State appeals from the trial court's order granting Appellee Osama M. Abdallah's motion to quash the information in this case for failure to allege a culpable mental state. In its sole point, the State argues that the trial court abused its discretion in granting Appellee's motion to quash because (1) the information tracks the language of the statute and is therefore sufficient; and (2) the statute criminalizing the conduct "plainly dispenses with" any mental element. We affirm the trial court's order.

### PROCEDURAL BACKGROUND

Appellee was charged under section 154.502(2) of the tax code with offering for sale a package of cigarettes without a tax stamp affixed. TEX. TAX CODE ANN. § 154.502(2) (Vernon 1992). On March 19, 2001, Appellee filed a motion to quash the State's information arguing that the charging instrument "fail[ed] to allege an offense" by neglecting to specifically allege a culpable mental state. At the hearing on the motion to quash, the State maintained that its information was sufficient and moved the court to deny the motion. On April 18, 2001, the trial court nevertheless granted the motion and the State immediately appealed.

### THE STATUTORY LANGUAGE

■ The State contends that the trial court erred in granting Appellee's motion to quash because the information "precisely tracks" the language of the statute and because the statute "plainly dispenses" with an applicable culpable mental state. We review complaints regarding a trial court's granting of a motion to quash an information or indictment under an abuse of discretion standard. *Thomas v. State*, 621 S.W.2d 158, 163 (Tex.Crim.App. [Panel Op.] 1981) (op. on reh'g).

The State relies on the general rule stated in *State v. Edmond*, 933 S.W.2d 120, 127 (Tex.Crim.App.1996) (holding a charging instrument that tracks the statutory language proscribing certain conduct is sufficient to charge a criminal offense). However, when a statute is silent about the culpable mental state, as here, there is a presumption that a culpable mental state is a required element of the offense unless the statute plainly dispenses with any mental element. TEX. PENAL CODE ANN. § 6.02(b) (Vernon 1994); *Aguirre v. State*, 22 S.W.3d 463, 472 (Tex.Crim.App.1999).

### THE "PLAINLY DISPENSED WITH" ISSUE

■ We may conclude that a statute plainly dispenses with the requirement that the charging instrument allege a culpable mental state only if the State overcomes the presumption that a culpable

mental state is an element of the offense that should be alleged in the indictment or information. *Aguirre*, 22 S.W.3d at 472. In the absence of an express intent by the legislature to dispense with the requirement of a culpable mental state, we must determine whether such an intent is manifested by examining "other features" of the statute. *Id.*

We first begin with the presumption that a culpable mental state is an element of the instant offense that should have been alleged before we analyze the other features. *See id.* at 476. We must also keep in mind that if we determine that a culpable mental state is not required in this case, we are construing section 154.502(2) to be a strict liability statute. *See id.; Am. Plant Food Corp. v. State*, 587 S.W.2d 679, 685 (Tex.Crim.App.1979).

In *Aguirre*, after analyzing the statutory language and other features of a city ordinance making it a violation to operate live adult nude entertainment clubs in certain geographical areas, the court of criminal appeals determined that the statute required a culpable mental state even though no such mens rea was provided in the statute itself. *Aguirre*, 22 S.W.3d at 477. The court noted that section 6.02's plainly-dispenses-with provision follows modern codes, which provide that "a statute is not to be treated as a strict liability statute unless it '*clearly indicates*' or '*plainly appears*' that such a result was intended by the legislature." *Id.* at 471 (emphasis added). The court further recognized that there is a general presumption *against* classifying crimes as strict liability crimes. *See id.* at 472. Because it is generally presumed that criminal statutes are not intended to create strict liability, it is also presumed that some form of mens rea must be alleged when charging individuals under criminal statutes.

In analyzing the features of the city ordinance in *Aguirre*, the court held that the presumption against strict liability or dispensing with the mens rea was not overcome. *See id.* at 476. Ironically, the features that the State argues should convince us to agree that the statute in this case was intended to create strict liability, are even less persuasive than those in *Aguirre*:

Some features of the ordinance are consistent with its imposing strict liability. The punishment is only a fine. The ordinance applies only to persons in a certain trade, and to their carrying on a business. Prosecuting officials would have some difficulty in proving that an employee of such a business was aware of its location in relation to other properties. It is, in some sense, an ordinance to protect public safety or welfare.

But it is hardly in the class of public-safety statutes that we have found to impose strict liability, such as those that punish such dangerous activities as speeding, adulteration of food, driving while intoxicated, and pollution of water.

*See id.*

■ In addition to considering the subject of the statute, which the court of criminal appeals felt was one of the most important factors, the court also set forth other features to analyze. *Id.* at 472, 475. If applicable, the following features would indicate that the legislature intended to impose liability without fault, i.e., intended to dispense with a culpable mental state: (1) a risk of serious harm to the public is likely to result from a violation of the statute; (2) the legislative history of the statute indicates an intention to dispense with fault; (3) the statute imposes less severe punishment for its violation; (4) the accused has some opportunity to ascertain the true facts as to why he is being charged with a violation without proof of

fault; (5) prosecuting officials will have much more difficulty proving the accused committed the offense if the statute requires proof of mental culpability; and (6) the fewer the number of prosecutions that are expected to occur, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault. *Aguirre*, 22 S.W.3d at 475. We consider each of the factors as they apply to the instant case in turn.

## Risk of Public Harm

The court of criminal appeals opined that strict liability statutes traditionally relate to public health, safety, or welfare. *Id.* at 473. Therefore, in determining whether the legislature intended to dispense with a culpable mental state or create strict liability, it is proper to consider whether the subject of the statute relates to public health, safety, or welfare. This analysis ties in to factor three above—the seriousness of harm to the public.

At best, it is a stretch to conclude that the violation of a cigarette tax provision threatens public health, safety, or welfare. The *Aguirre* court noted that the city ordinance in question there was, "in some sense, an ordinance to protect public safety or welfare," yet still found that the statute was "hardly in the class of public-safety statutes that we have found to impose strict liability." *Id.* at 476. Operating a nude entertainment club in close proximity to a church, school, or residential area is arguably more of a threat to public health, safety, or welfare than whether a tax stamp is placed on a pack of cigarettes.

We disagree with the State's contention that section 154.502's violation results in "significant" public harm. "Providing a windfall for the seller" and placing "law-abiding distributors and retailers who have payed (sic) the tax ... at an unfair busi-

ness advantage" is hardly the type of harm contemplated by other strict liability statutes such as "speeding, adulteration of food, driving while intoxicated, and pollution of water." *Id.* at 476; *see also Ex parte Weise*, 23 S.W.3d 449, 454 (Tex. App.—Houston [1st Dist.] 2000), *rev'd on other grounds*, 55 S.W.3d 617, 620–21 (Tex. Crim.App. 2001) (holding that illegal dumping statute should not be construed as a strict liability statute under *Aguirre* factors in part because "it is not of such great importance to [the health and welfare of] society as to automatically require strict liability").

## Legislative History

The State suggests that the legislative history of section 154.502, though sparse, provides some support for its argument. The State notes *Aguirre's* holding that, "[i]t is particularly significant when some such word as 'knowingly' is used in one section of a statute and omitted from another." *Aguirre*, 22 S.W.3d at 472. The State claims that because subsection three of the statute provides that a person commit the violation "knowingly," while subsections one and two omit a culpable mental state, the legislature must have intended to dispense with the requirement of a culpable mental state in subsections one and two. *See* TEX. TAX CODE ANN. § 154.502. The *Aguirre* court formulated the above rule in the context of a case in which three out of the four subsections contained a culpable mental state while the one at issue did not. *Aguirre*, 22 S.W.3d at 475 (citing *Neill v. State*, 154 Tex.Crim. 549, 552, 229 S.W.2d 361, 363 (1950)). Indeed, other courts have agreed with *Aguirre's* holding that omitting the culpable mental state in one section where the other three subsections include it is a "clear implication" of the intent to dispense with a mental element

in that section. *See Thompson v. State,* 44 S.W.3d 171, 178 (Tex.App.—Houston [14th Dist.] 2001, no pet.); *Weise,* 23 S.W.3d at 452 (citing *Aguirre,* 22 S.W.3d at 473). However, the other courts relying on the above principle analyzed statutes in which *none* of the sections or subsections contained any mention of a culpable mental state, and, therefore, could easily conclude that there was no "clear implication" of an intent to dispense with the requirement. *See Thompson,* 44 S.W.3d at 178; *Weise,* 23 S.W.3d at 452.

To the contrary, we cannot so easily conclude that the legislature's omission of a culpable mental state in subsections one and two, while including it in subsection three, "clearly indicates" that it intended to dispense with a culpable mental state. The original law from which section 154.502 evolved unfortunately provides no guidance—there are some subsections that contain culpable mental states, while there are just as many that do not. *See* Act of May 9, 1935, 44th Leg., R.S., ch. 241, § 25, 1935 Tex. Gen. Laws 575, 599. It is unclear whether the legislature intentionally left the mental states out of subsections one and two as they exist today, or whether it simply duplicated the subsections from the original text without any revision. Rather than speculating, we instead find the clear-cut presumptions against dispensing with the mens rea and against construing statutes as strict liability to be controlling.

In *Liparota v. United States,* the Supreme Court discussed a similar issue regarding whether the legislature intended to dispense with a culpable mental state in a criminal statute, and noted:

> The contention that an injury can amount to a crime only when inflicted [with] intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. *Thus ... we noted that "[c]ertainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement" and that criminal offenses requiring no mens rea have a "generally disfavored status." Similarly, in this case, the failure of Congress explicitly and unambiguously to indicate whether mens rea is required does not signal a departure from this assumption of our criminal law.*

*Liparota v. United States,* 471 U.S. 419, 425–26, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985) (citations omitted) (quoting *Morissette v. United States,* 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952) and *United States v. United States Gypsum Co.,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978)).

In addition, we disagree that the legislature's act of twice altering the statute without adding a culpable mental state, demonstrates its intention to dispense with the culpable mental state. We are not persuaded that such factors rise to the level of *"clearly indicat[ing]* or *plainly appear[ing]* that such a result was intended by the legislature." *Aguirre,* 22 S.W.3d at 471. We must speculate as to the legislative intent behind section 154.502, whereas the drafter's comments to section 6.02(b), as noted in *Aguirre,* leave little room for surmise:

> Subsection (a), in restating Penal Code art. 39, preserves for the new code the traditional mens rea requirement of the criminal law. Moreover, subsection (b) imbues this requirement with the force of a presumption because, as the Court of Criminal Appeals aptly phrased it, "The punishment of one for an offense

when he is able to show that the act was done without guilty knowledge or intent is contrary to the general principals of criminal law." ... *Despite Subsection (b), of course, the legislature is free to dispense with the requirement of a culpable mental state—as it has done in creating the so-called strict liability offenses, e.g., Neill v. State, 225 S.W.2d 829 (Tex.Crim.App.1949) (adulterated food); Goodwin v. State, 63 Tex.Crim. 140, 138 S.W. 399 (1911) (speeding)—but its intent to eliminate mens rea must be manifest.*

*Id.* at 471 (other citations omitted). In light of this authority, we cannot say that the trial court abused its discretion in determining that the culpable mental state was not dispensed with by section 154.502(2).

### Severity of the Punishment

Under this factor, the State maintains that because a section 154.502 violation results in less severe punishment than some other criminal statutes, it may be construed as a strict liability statute. However, the court of criminal appeals noted in *Aguirre* that although the city ordinance merely provided for a fine (rather than jail time) in the event of its violation, the court was not persuaded that the statute was intended to dispense with a culpable mental state and impose strict liability. *See id.* at 476. A violation of section 154.502(2) constitutes a Class A misdemeanor, carrying with it a maximum $4000 fine *and* a jail term of up to one year. *See* Tex. Tax Code Ann. § 154.510 (Vernon Supp. 2001); Tex. Penal Code Ann. § 12.21 (Vernon 1994). The penalty is therefore much more stringent than in *Aguirre*, and causes us to give more weight to this factor. *See Weise*, 23 S.W.3d at 454 (finding illegal dumping statute's penalty of 180 days in jail or a fine not to exceed $2000 a "particularly weighty factor that militates against [the imposition of] strict liability").

### Accused's Opportunity to Ascertain the True Facts

The State asserts that a "defendant possesses an easy opportunity to ascertain whether a cigarette pack is stamped or not: he need only examine the package." However, the court of criminal appeals set forth this feature in the context of who, as between one in a business or an ordinary citizen, would have greater knowledge of the accepted standards of conducting the activity out of which the offense arose. *See Aguirre*, 22 S.W.3d at 476–77. In other words, who is in the best position to prevent the violation. *Id.* at 477. There is nothing in section 154.502 to indicate that it only applies to businesses or business owners. Thus, it could as easily apply to ordinary citizens. The average citizen is not likely to be aware of some obscure statute about placing a stamp on a package of cigarettes, whereas one in the business of selling cigarettes is likely to know, or should know, whether his merchandise is properly marked. We decline the State's invitation to create strict liability for ordinary citizens, like Appellee, who are not in a position to know that such a law even exists. *See id.* (holding that employee of live nude business was not in the best position to know, nor had much of an incentive to find out, that his place of employment was within 1000 feet of a school in violation of a city ordinance, whereas the owner of the business was); *see also Weise*, 23 S.W.3d at 455 (holding "Appellant is merely an ordinary citizen, and the statute in question does not direct itself solely to businesses. This factor favors interpreting the statute as requiring a culpable mental state").

### The Difficulty of Proving the Mental State

The court in *Aguirre* noted that where the violation of an offense is more difficult

to prove, it is more likely that the legislature intended to relieve the State of the burden of proving mens rea. *Aguirre*, 22 S.W.3d at 475. We disagree that the State has an overly burdensome task in proving that an accused is at least negligent in offering cigarettes for sale without a tax stamp affixed to the package. *See* Tex. Penal Code Ann. § 6.02(d) (providing: "Culpable mental states are classified ... from highest to lowest, as follows: (1) intentional; (2) knowing; (3) reckless; (4) criminal negligence"). The State asserts that a prosecutor's argument in attempting to prove a culpable mental state in section 154.502(2) cases "might not be easily understood by a jury." Because of this, the State contends, the legislature must have intended to dispense with the requirement that it prove a culpable mental state. Proving that a culpable mental state existed when a person violated section 154.502(2) is no more difficult, however, than proving that a culpable mental state existed when a person committed a murder or a robbery. Furthermore, there is no authority for the State's proposition that because a jury might have difficulty understanding a "circular argument," the State need not be held to its burden of proof.

**The Number of Expected Prosecutions**

Under this factor, the State argues, "the unpopularity of taxes in general, coupled with the expense and popularity of cigarettes in particular, means that the legislature could have anticipated that the number of prosecutions under the statute would potentially be high." The State cites no authority for such a proposition, however, and we have found none. Moreover, it simply does not seem logical that the legislature decided to dispense with the culpable mental state out of its fear that section 154.502(2) would be prosecuted excessively. We conclude that the potential number of prosecutions under section 154.502(2) is no more great than the potential number of prosecutions under other statutes, such as the city ordinance in *Aguirre*. *See Aguirre*, 22 S.W.3d at 477.

Conclusion

The *Aguirre* factors as applied in this case do not persuade us that the legislature intended to dispense with a culpable mental state in section 154.502(2). First, a violation of section 154.502(2) presents little or no risk of serious harm to the public as do "traditional" strict liability crimes such as driving while intoxicated. Similarly, the legislative history of the statute provides us with little guidance and cannot be said to "clearly indicate" an intention to dispense with a culpable mental state. Moreover, ordinary citizens who might be charged with a violation of section 154.502(2) are not in as good a position to understand or have reason to know that such a statute exists as are business owners. Finally, prosecuting officials are not faced with an unduly arduous task in proving that a culpable mental state existed at the time a person violated section 154.502(2), nor do we think it logical that the legislature feared section 154.502(2) would be so frequently prosecuted that the State should be relieved of having to prove that a culpable mental state existed at the time of its violation.

Because tracking the statutory language was insufficient, and the requirement of a culpable mental state was not dispensed with, the trial court did not abuse its discretion in granting the motion to quash the information. The order of the trial court is affirmed.