COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-411-CR

 

ANGELA K. SPENCE                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

In four
issues, Appellant Angela K. Spence appeals from her conviction for Driving
While Intoxicated (ADWI@).  We affirm.

II. 
Factual and Procedural Background








On New
Years Day in 2007, around 1:30 a.m., Bedford Police Officer James McClure
responded to a dispatch call regarding a possible intoxicated driver.  After locating the vehicle described by
dispatch, and observing the driver commit a traffic violation, Officer McClure
initiated a stop.  He McClure approached
the vehicle and asked the driver, later identified as Spence, for her driver=s
license and insurance.  While talking
with Spence, Officer McClure smelled a strong odor of alcohol, noticed that
Spence had bloodshot, watery eyes, and observed that she had a hard time
focusing.  When asked if she had been
drinking, Spence informed him that she had had one glass of wine about two
hours before being pulled over.  Officer
McClure asked Spence to step out of the vehicle so he could administer standard
field sobriety tests.  When Spence exited
the vehicle and began walking, Officer McClure noticed that she was Avery
unsteady@ and Aneeded
support.@  After administering the field sobriety tests,
Officer McClure placed Spence under arrest for DWI.  He then transported her to the Bedford
jail.  While at the jail, Spence
consented to the taking of two breath specimens, which revealed that she had a
blood alcohol concentration of .200 and .204, respectively.








The
State charged Spence with the offense of DWI. 
Spence pleaded not guilty.  At
trial, Spence testified that on December 31, 2006, she had had two glasses of
wine while eating dinner with some friends. 
After dinner, she had gone to a friend=s condo
and, although given an alcoholic beverage, had not consumed any alcohol.  After leaving the condo, she had gone to the
Iron Cactus, a Mexican grill and margarita bar, where she remembered having one
glass of wine.  Her last memory before
giving her thumb print in jail was of dancing with her friend, Baxter, at the
Iron Cactus and of Baxter leaving her to go get himself a drink.

When
questioned about whether she had ever been intoxicated before, Spence testified
to the following:

[State]:  Have you ever been intoxicated before?

[Spence]:  Yes.

[State]:  And how much did you drink to make yourself
intoxicated?

[Spence]:  I have not had that
much before in my life, but probably a lot. 
MaybeCI had shots one time, so
shots did it.

 

[State]:  Do you remember how
many shots?

 

[Spence]:  Probably four or so.

 

. . .

 

[State]: 
The night that you got intoxicated on those shotsC

 

[Spence]:  Yeah.

 

[State]:  You woke up the next
morning.  Do you remember everything that
happened the night before?

 

[Spence]:  I mean, most of it,
yeah.

 

[State]:  But not everything.

 








[Spence]:  I mean, I don=t know to be sure, but I
have not been drunk that often, but I think I remember most everything.

 

In
addition to Spence=s testimony, the defense
introduced evidence regarding C.M., another patron at the Iron Cactus on the
night in question, who had allegedly been drugged and sexually assaulted.  The defense argued that, like C.M., Spence
must have been drugged too and that it was the drug that caused her to continue
drinking.  To support this argument, the
defense introduced an affidavit from E.W., a friend of C.M.=s,
stating that C.M. 

is a friend of mine and was staying in my home during the holidays,
December 2006.

 

She went to dinner with me, my roommate, and other friends of mine on
12/31/06 until approx. 10:30 or 11:00 pm. [T]hen we went together to Iron
Cactus Bar & Grill for a New Year=s Eve party. 
We arrived at the party at approx. 11:00 pm.

 

I left the party with several friends around 1:30 am 01/01/07 and
[C.M.] stayed behind with my roommate. 
She had not been acting questionablyCshe was lucid, calm, and in control when I left
the party. [C.M.] did not return home that night.  The next morning, [C..M.]=s mother called my
roommate and told us that [C.M.] suspected that she had been given a date-rape
drug and possibly raped, and that [C.M.] had gone to Parkland Hospital to see a
doctor as a result of her suspicion.  At
that point, my roommate and I went to meet [C.M.] @ Parkland.

 

The defense also introduced C.M.=s
medical records, which showed that C.M. had been admitted to the hospital and
tested for STD exposure.  The medical
records did not confirm that C.M. had been drugged or sexually assaulted.








On
cross-examination, the State questioned Spence on whether she had ever
undergone any kind of testing to determine if she had been drugged.  Spence responded that she had not.  On recross-examination, when questioned
further about whether she had been tested, Spence responded, AI mean,
I didn=t get a
test afterwards, soCbut the assumption is absolutely
that, you know, there was something else involved.@ 

After
taking the matter under advisement, the trial court found Spence guilty of the
offense of DWI. 

During a
combined hearing on Spence=s AMotion
for Reconsideration of Judgment@ and on
punishment, the trial court orally stated that Athere
was an involuntary intoxication in this case.@  At the close of the hearing, the trial court
denied Spence=s motion and upheld its judgment
of guilty.  The trial court sentenced
Spence to 120 days= confinement and assessed a $550
fine, suspended the sentence, and placed her on twelve months of community
supervision.  This appeal followed.

III. 
Involuntary Act








In her
first three issues, Spence argues that the trial court=s
finding that Spence was involuntarily intoxicated constitutes a finding that
her intoxication was the result of an involuntary actCthat is,
that Spence did not voluntarily become intoxicatedCand,
thus, the evidence is legally insufficient to support her conviction.  We disagree.

A.  Standard of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

B.  Applicable Law








A person
who commits an act in violation of a strict liability statute may be held
criminally liable even though she might be innocent of any criminal
intent.  See State v. Walker, 195
S.W.3d 293, 298 (Tex. App.CTyler 2006,
no pet.).  Strict liability statutes are
traditionally associated with the protection of public health, safety, or
welfare.  Aguirre v. State, 22
S.W.3d 463, 473 (Tex. Crim. App. 1999). 
Generally, the more serious the consequences to the public, the more
likely the legislature meant to impose liability without regard to fault.  Thompson v. State, 44 S.W.3d 171, 180
(Tex. App.CHouston [14th Dist.] 2001, no
pet.).  In most strict liability
offenses, the statutes protect unwitting and unwilling members of the public
from the noxious and harmful behavior of others in situations in which it would
be difficult for members of the public to protect themselves.  Id. 
If a statute plainly dispenses with a culpable mental state as an
element of the offense, it is a strict liability statute.  See Walker, 195 S.W.3d at 298. 

Under
Texas law, a person commits DWI Aif the
person is intoxicated while operating a motor vehicle in a public place.@  Tex. Penal Code Ann. ' 49.04
(Vernon 2003).  A person is intoxicated
if she does not have Athe normal use of mental or
physical faculties by reason of the introduction of alcohol . . . or any other
substance into the body.@ 
Id. ' 49.01(2).  Under chapter 49 of the penal code, proof of
a culpable mental state is not required for a DWI conviction.  Id. ' 49.11; see
Owen v. State, 525 S.W.2d 164, 164B65 (Tex.
Crim. App. 1975).  Therefore, DWI is a
strict liability offense.  See Walker,
195 S.W.3d at 298.

Section
6.01(a) of the penal code provides, however, that, A[a]
person commits an offense only if he voluntarily engages in conduct, including
an act, an omission, or possession.@  Tex. Penal Code Ann. ' 6.01(a)
(Vernon 2003).  In Rogers v. State, the court of criminal appeals addressed
what this requirement means: 

[T]he >voluntary act= requirement does not
necessarily go to the ultimate act . . . but only that criminal responsibility
for the harm must >include an act= that is voluntary . . .
. 








[C]onduct [is not] rendered involuntary merely because an accused does
not intend the result of his conduct. 
Therefore, the issue of the voluntariness of one=s conduct, or bodily movements, is
separate from the issue of one=s mental state . . . . 

 

105 S.W.3d 630, 638 (Tex. Crim.
App. 2003) (emphasis added).

Various
courts of appeals, in addressing the issue of voluntariness, have looked at Ainvoluntary
act@ or Aautomatism@ as a
defense to DWI.  See, e.g., Peavey v.
State, 248 S.W.3d 455, 465 (Tex. App.CAustin
2008, pet. ref=d) (providing a detailed
analysis and application of automatism as a defense to DWI); see also
Stamper v. State, No. 05‑02‑01730‑CR, 2003 WL 21540414,
at *1 (Tex. App.CDallas July 9, 2003, pet. ref=d) (mem.
op., not designated for publication) (acknowledging that the appellant
incorrectly argued involuntary intoxication when she should have argued
involuntary act); Waters v. State, No. 01‑96‑00631‑CR,
2001 WL 754759, at *3 (Tex. App.CHouston
[1st Dist.] June 29, 2001, no pet.) (not designated for publication) (analyzing
whether appellant voluntarily became intoxicated).[2]








In order
to assert Ainvoluntary act@ as a
defense, however, the defendant must produce Aevidence
of an independent event, such as the conduct of a third party, that could have
precipitated the incident.@  Rhodes v. State, 997 S.W.2d 692, 694
(Tex. App.CTexarkana 1999, pet. ref=d)
(citing Brown v. State, 955 S.W.2d 276, 280 (Tex. Crim. App.
1997)).  In addition, the defense is
available only Aif the accused admits committing
the act or acts charged and seeks to absolve [herself] of criminal
responsibility for engaging in the conduct.@  Peavey, 248 S.W.3d at 465; Trujillo
v. State, 227 S.W.3d 164, 169 (Tex. App.CHouston
[1st Dist.] 2006, pet. ref=d).

C.  Analysis

Here,
the trial court stated at the combined hearing on Spence=s AMotion
for Reconsideration of Judgment@ and on
punishment, A[T]here was an involuntary
intoxication in this case,@ not
that there was an involuntary act. 
Although Spence invites us to speculate that the trial court really
meant to say Ainvoluntary act@; we
decline this invitation for two reasons.








First,
as involuntary intoxication is not a defense to DWI, and the trial court upheld
Spence=s
conviction, we cannot conclude that the trial court made a contrary finding of
involuntary act based solely upon this statement.  See Brown, 290 S.W.3d at 251 (holding
that involuntary intoxication is not a defense to DWI); Aliff, 955
S.W.2d at 893 (same).  Second, the
evidence does not support a finding that an involuntary act caused Spence=s
intoxication.

The
record shows that Spence was driving when Officer McClure pulled her over for
committing a traffic violation.  It also
shows that upon making contact with Spence, Officer McClure smelled a strong
odor of alcohol, observed that she had bloodshot, watery eyes, and noticed that
she had a hard time focusing.  Officer
McClure testified that Spence was Avery
unsteady@ and Aneeded
support@ when
she exited her vehicle and began walking. 
Spence herself testified to having two glasses of wine prior to going to
the Iron Cactus and one while she was at the Iron Cactus.  Finally, Spence=s breath
specimens revealed that she had a blood alcohol concentration of .200 and .204.









The
record also revealed that (1) Spence did not recall what had occurred from the
time her friend Baxter had left her to go and get himself a drink at the Iron
Cactus up to her giving her thumb print at the jail, (2) although another patron
at the Iron Cactus on the same night as Spence was allegedly drugged and
sexually assaulted, those allegations were not confirmed, (3) Spence never
testified that anyone drugged her drink, only that Athe
assumption is absolutely that, you know, there was something else involved,@ (4)
Spence, at one time, had become intoxicated on Aabout
four or so@ shots, (5) Spence did not know
for sure if she remembered everything the next day when she had been
intoxicated on other occasions, (6) there was no evidence pertaining to the one
glass of wine that Spence admitted to having at the Iron CactusCthat is,
whether she received it directly from an employee or indirectly from a friend
or a stranger, (7) there was no evidence that Spence ever left her drink
unattended, (8) there was no evidence that anyone placed anything into Spence=s drink,
and (9) there was no evidence as to the types of drugs that could have been put
into Spence=s drink and the effect that
those drugs might have had on Spence=s
actions.  Thus, the trial court=s
implicit rejection of Spence=s
defense of involuntary act is supported by the evidence.  See Howey v. State, No. 05‑08‑00483‑CR,
2009 WL 264797, at *5B6 (Tex. App.CDallas
Feb. 5, 2009, no pet.) (mem. op., not designated for publication) (concluding
that appellant who did not recall driving her car or the events surrounding her
arrest was not entitled to the defense of involuntary act because she
voluntarily consumed at least two glasses of wine and her assertion that
someone might have drugged her was too speculative); Peavey, 248 S.W.3d
at 465 (reaching the same result on similar facts).








Therefore,
because we hold that this is not a case of involuntary act, we further hold
that a rational trier of fact could have found that the evidence at trial was
sufficient to establish the elements of DWI beyond a reasonable doubt.  See Jackson, 443 U.S. at 326, 99 S.
Ct. at 2793; Clayton, 235 S.W.3d at 778; see also Tex. Penal Code
Ann. ' 49.04
(stating elements of DWI).  Accordingly,
we overrule Spence=s first three issues.

IV. 
Constitutional Violation

In her
fourth and final issue, Spence contends that A[i]f
Texas Penal Code sect. 49.11 requires a finding of guilt for the offense of
driving while intoxicated when the acts leading to intoxication were
involuntary, it is unconstitutional in violation of due process of law.@  However, because we do not hold that section
49.11 requires a finding of guilt when the acts leading to intoxication were
involuntary, but instead hold that the trial court=s
finding of involuntary intoxication is not a finding of involuntary act, we do
not reach Spence=s final issue.[3]








V. 
Conclusion

Having
overruled Spence=s dispositive issues, we affirm
the trial court=s judgment.

 

 

BOB MCCOY

JUSTICE

 

PANEL:  LIVINGSTON, MCCOY, and
MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  November 5, 2009











[1]See Tex. R. App. P. 47.4.





[2]This is not to be
confused with Ainvoluntary intoxication,@ which is not a defense
to DWI.  See Torres v. State, 585
S.W.2d 746, 749 (Tex. Crim. App. 1979) (stating that involuntary intoxication
is a defense to criminal liability for offenses requiring a culpable mental
state when (1) the accused has exercised no independent judgment or
volition in taking the intoxicant, and (2) as a result of his intoxication, the
accused did not know that his conduct was wrong or was incapable of conforming
his conduct to the requirement of the law he allegedly violated); see also
Brown v. State, 290 S.W.3d 247, 251 (Tex. App.CFort Worth 2009, pet. ref=d) (declaring that the
offense of DWI does not require a culpable mental state; therefore, involuntary
intoxication is not a defense to DWI); Aliff v. State, 955 S.W.2d 891,
893 (Tex. App.CEl Paso 1997, no pet.)
(same).





[3]Spence also argues that
section 49.11 of the Texas Penal Code is unconstitutional based on the
elimination of the mental state requirement. 
Spence=s constitutional
objections during trial, however, centered on the act of voluntariness and not
on the demand that a culpable mental state apply to the offense of DWI.  Therefore, Spence has failed to preserve this
issue for our review.  See Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that the
complaint made on appeal must comport with the complaint made in the trial
court or the error is forfeited); see also Karenev v. State, 281 S.W.3d
428, 434 (Tex. Crim. App. 2009) (holding that even facial constitutional
challenges must first be raised at trial).