**EXXON COMPANY, U.S.A., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–82–0125–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 16, 1982.

Discretionary Review Refused
March 23, 1983.

Chris Lorenzen, Houston, for appellant.

Winston Cochran, Jr., Houston, for appellee.

Before PRICE, WARREN and DOYLE, JJ.

### OPINION

PRICE, Justice.

This is an appeal from a conviction for the offense of air pollution under the provisions of Article 4477–5b of Vernon's Ann. Civ.Stat. The evidence was presented to the trial court by way of an agreed stipulation.

Punishment was a $1,000.00 fine.

This prosecution was initiated by a complaint signed by A.R. Peirce, the director of the Harris County Pollution Control Department. The pollutant was a catalytic dust released into the air from the Exxon refinery located in Baytown, Texas on February 27, 1981. This dust settled over a wide area of Baytown, interfering with other persons' use and enjoyment of their property. The appellant had no permit to emit the discharged dust.

Prior to trial, the appellant filed a motion to quash the information and two motions to dismiss the prosecution. The contention on appeal is that the trial court erred in overruling these motions.

■ The appellant contends here, as it did in the motion to quash, that the information is defective because it fails to allege a culpable mental state in violation of the Tex.Penal Code Ann. Sec. 6.02(b).

Article 4477–5b of Vernon's Ann.Civ. Stat., entitled *Air Pollution,* provides in part:

Section 1. In this article:

(1) "Air contaminant" means particulate matter, dust, fumes, gas, mist, smoke, vapor, or odor, or any combination thereof, produced by processes other than natural.

(2) "Person" means an individual or a private corporation.

(3) "Air pollution" means the presence in the atmosphere of one or more air contaminants or combinations thereof, in such concentration and of such duration as are or may tend to be injurious to or to adversely affect humans, animal life, vegetation or property, or as to interfere with the normal use and enjoyment of animal life, vegetation or property.

(4) "Source" means any point of origin of an air contaminant, whether privately or publicly owned or operated.

Sec. 2. No person may cause or permit the emission of any air contaminant which causes or which will cause air pollution unless the emission is made in compliance with a variance or other order issued by the Texas Air Control Board.

Sec. 3. No person to whom the Texas Air Control Board has issued a variance or other order authorizing the emission of any air contaminant from a source may cause or permit the emission of the air contaminant in violation of the requirements of the variance or order.

Sec. 4. Any person who violates any of the provisions of Sections 2 or 3 of this article is guilty of a misdemeanor and upon conviction is punishable by a fine of not less than $10 nor more than $1,000.

Each day that a violation occurs constitutes a separate offense.

Omitting the formal parts, the information alleges that:

... Exxon Company U.S.A. ... on or about February 27, 1981, did then and there unlawfully cause and permit the emission of an air contaminant, to-wit: dust produced by an unnatural process, from a catalytic unit at a refinery in Baytown, Texas, which emission caused air pollution, namely the presence in the atmosphere of the aforesaid air contaminant in such concentration and of such duration as to adversely affect property and to interfere with the normal use and enjoyment of property, the said emission of the air contaminant not being made in compliance with a variance or other order issued by the Texas Air Control Board.

Sections 6.02 and 6.03 of the Penal Code establish the requirements and definitions of culpability for the Penal Code, and Section 1.03(b) makes it clear that these provisions, as well as the other provisions of Title 1, 2, and 3 of the Code, apply to offenses defined by the civil statutes "unless the statute defining the offense provides otherwise." Since nothing in Article 4477–5b provides otherwise, it is clear that Sections 6.02 and 6.03 apply to this statute.

Section 6.02 of the Penal Code provides in part:

Sec. 6.02 Requirement of Culpability

(a) Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility.

In determining whether the Legislature, through enactment of Sections 6.02 and 1.03(b) of the Penal Code, intended to require proof of a culpable mental state in the offense of air pollution, we must first examine the legislative history of the statute. The present air pollution statute was transferred without change from Article 698d, Sections 1 through 6 of the Penal Code of 1925, pursuant to the authority granted by Section 5 of Acts, 63rd Legislature, Ch. 399.

In *Ex parte Ross,* 522 S.W.2d 214 (Tex.Cr. App.1975), the defendant claimed that a complaint charging him with the offense of driving while intoxicated was defective because it failed to allege a culpable mental state. The court, after noting that the DWI statute had been transferred verbatim *from the criminal statutes to the civil statutes,* held that a culpable mental state was not required. The court reasoned that if the Legislature had intended to require proof of a culpable mental state, it could have done so easily when it amended the statute and transferred it from the Penal Code to the civil statutes. Thus, to allow Section 6.02 to supply the missing mens rea would be an awkward analysis of the legislature's intent.

The reasoning of the Court of Criminal Appeals in the *Ross* decision was likewise applied in *American Plant Food Corp. v. State,* 587 S.W.2d 679 (Tex.Cr.App.1979), holding that there was no mens rea requirement in the water pollution statute. This concept of strict liability is founded on the premise that the mere doing of the act constitutes the offense and the lack of intent will not exonerate the party nor does this make the prohibited act any less harmful to society.

The appellant cites numerous cases holding that Section 6.02 has been applied to a variety of offenses defined outside the Penal Code to require a culpable mental state. We agree with the State's analysis of these cases in their brief. In each case, the nature of the offense required that an identifiable person be aware of a situation that presented a choice between right and wrong conduct, and the person consciously chose to do the wrong conduct.

In contrast, cases involving air pollution, especially where corporations are involved, would be difficult to prosecute because of the difficulty in charging one person with the responsibility of causing the problem. Considering the risks to public health, to require anything other than a strict liability standard would be to deny the public the right to be protected from hazardous activities.

We overrule the first ground of error.

Appellant next challenges the statute as unconstitutionally vague to satisfy the requirements of due process. The contention is that the vagueness resides in the definition of "air pollution" in Section 1(3) of Article 4477–5b. Specifically, appellant asserts that the possibility of conviction for causing air pollution that only "adversely affects property" or "interferes" with the normal use and enjoyment of property," renders the statute void for vagueness.

■ In the present case, because a conviction is permitted on a finding of either disjunctive element, to be entitled to a reversal, appellant must show that the theory upon which the conviction rests is the one couched in vague language. If any provision of a statute is declared invalid, this invalidity does not affect the other provisions of that statute that can be given effect independent of the invalid portion. Article 5429b–2, Sec. 3.12 V.A.C.S.

The stipulated evidence before us shows that the prosecution was based on a theory of "interference with the normal use and enjoyment of property." The record reflects that large accumulations of the emitted dust had collected on the floor of the Baytown Fire Station as well as on vehicles at the fire station and at residences in the Baytown area.

The phrase "interference with the normal use and enjoyment of property" has a long legal history in the civil law of nuisances. Nuisances have been defined as, and damages have been awarded for, conditions which interfere with the use and enjoyment of property. *Sunray Oil Corp. v. Sharpe,*

209 F.2d 937 (5th Cir.1954); *Meat Producers, Inc. v. McFarland,* 476 S.W.2d 406 (Tex. Civ.App.—Dallas 1972, writ ref'd n.r.e.).

Due process only requires that a statute define terms in understandable language so that men of common intelligence do not have to guess at its meaning or differ as to its application. *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Ex Parte Chernosky,* 153 Tex.Cr.R. 52, 217 S.W.2d 673 (1949). Thus, we hold that the phrase "interfere with the normal use and enjoyment of property" is not unconstitutionally vague.

We do not reach the question of whether the phrase "adversely affect property" is vague because the conviction did not rely on that phrase and the appellant was not prejudiced by its inclusion in the information.

The second ground of error is overruled.

In its third ground of error, the appellant contends that the local government of Harris County was not authorized to institute criminal proceedings under Article 4477–5b. Appellant argues that the provisions of Article 4477–5, The Texas Clean Air Act, should dictate the enforcement of Article 4477–5b. As a basis for this argument, appellant points out that the criminal statute specifically recites that it does not repeal or amend any of the provisions of the Clean Air Act. Appellant further alludes to the provisions of the Clean Air Act that establishes the Texas Air Control Board as the principal authority on matters relating to the quality of the air resources in the State and authorizes that board to institute civil suits for injunctive relief and civil penalties.

Appellant states that the complaint in the present case was initiated by an affidavit signed by A.R. Peirce, the Director of the Harris County Pollution Control Department, a "local government" within the provisions of the Clean Air Act, and argues that statutory authority does not permit "local governments" to enforce or administer the provisions of the criminal statute.

The criminal enforcement authority of Article 4477–5b does not depend on the provisions of the Clean Air Act. Article 4477–5b is penal in character, its origin having been transferred from the Penal Code of 1925. A violation of this statute is a misdemeanor offense and properly prosecuted in the County Criminal Courts at Law of Harris County. As in all misdemeanor offenses, the information must be based on an affidavit by some credible person charging a person with an offense. The fact that the complaint in the present case was signed by the Director of the Harris County Pollution Control Department is of no consequence as long as he is a credible person.

Because the District Attorney complied with the necessary statutory requirements for initiating this criminal prosecution, the appellant's third ground of error is overruled and the conviction is affirmed.