**Ex parte Bennett WEISE, Appellant.**

**No. 01–99–01195–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 13, 2000.

Rehearing Overruled July 7, 2000.

Cynthia Henley, Houston, for Appellant.

Rikke Burke Graber, John B. Holmes, Houston, for State.

Panel consists of Justices MIRABAL, TAFT, and PRICE.*

## OPINION

TIM TAFT, Justice.

Appellant, Bennett Weise, challenges the trial court's denial of his pretrial application for habeas corpus relief. We address whether a statute prohibiting the dumping of trash is unconstitutional for not requiring proof of a culpable mental state. We reverse and dismiss the information.

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

### Facts

By misdemeanor information, the State charged that appellant did:

> ... unlawfully, transport litter and other solid waste, namely, HOUSEHOLD TRASH, having an aggregate weight of more than fifteen pounds and less than 500 pounds, and a volume of more than thirteen gallons and less than 100 cubic feet, to a place that was not an approved solid waste site for disposal at the site.
>
> ... unlawfully, dispose, allow, and permit the disposal of litter and other solid waste, namely HOUSEHOLD TRASH, having an aggregate weight of more than fifteen pounds and less than 500 pounds, and a volume of more than' thirteen gallons and less than 100 cubic feet, at a place that was not an approved solid waste site.

Appellant filed a motion to quash the information and a pretrial application for habeas corpus relief, asserting that the illegal dumping statute was unconstitutional, as applied to him, because the information alleging the statute's violation did not set forth a culpable mental state.

At the hearing on the motion to quash and for pretrial habeas corpus relief, the trial court inquired whether this matter involved commercial dumping. Appellant's counsel clarified that the State was attempting to apply the statute to appellant, an individual whose trash was found. Based on several hypothetical scenarios, appellant's counsel argued that the State had interpreted the statute as providing for strict liability. The trial court denied the motion to quash the information and the application for habeas corpus relief. Appellant gave notice of appeal of the denial of the pretrial application for writ of habeas corpus.

### Constitutionality of Strict Liability

In his sole issue presented, appellant asks whether the statute criminalizing the dumping of trash is unconstitutional for imposing strict liability on persons who lack a culpable mental state. Appellant asserts, in his sole point of error, that the trial court erred in·denying appellant's pretrial application for writ of habeas corpus because the illegal dumping statute is unconstitutional, as applied to him, for lack of a culpable mental state.

 The decision to grant an application for habeas corpus relief is within the discretion of the trial court, and we will not disturb the trial court's decision unless that discretion was abused. *Ex parte Ayers*, 921 S.W.2d 438, 441 (Tex.App.—Houston [1st Dist.] 1996, no pet.). Whether the trial court abused its discretion depends upon whether it acted without reference to any guiding principles or rules. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim.App.1990) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)).

The illegal dumping statute proscribing appellant's alleged conduct is subsections 365.012(a) and (c) of the Texas Health and Safety Code. Subsection (a) provides: "A person commits an offense if the person disposes or allows or permits the disposal of litter or other solid waste at a place that is not an approved solid waste site...." TEX. HEALTH AND SAFETY CODE ANN. § 365.012(a) (Vernon Supp.2000). Subsection 365.012(c) ·provides: "A person commits an offense if the person transports litter or other solid waste to a place that is not an approved solid waste site for disposal at the site." TEX. HEALTH & SAFETY CODE ANN. § 365.012(c) (Vernon Supp.2000).

Appellant argues that, although the illegal dumping statute does not specifically require it, a culpable mental state is mandated by the Texas Penal Code, which provides:

> (a) Except as provided by Subsection (b), a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility.

TEX. PENAL CODE ANN. § 6.02 (Vernon 1994). Section 6.02, which is in Title 2 of the Texas Penal Code, is made applicable to the Texas Health and Safety Code by section 1.03(b) of the Texas Penal Code, which provides: "The provisions of Titles 1, 2, and 3 apply to offenses defined by other laws, unless the statute defining the offense provides otherwise...." TEX. PEN. CODE ANN. § 1.03(b) (Vernon 1994). Thus, under sections 6.02 and 1.03(b), the court had to determine whether section 365.012(a) plainly dispensed with a mental element.

Appellant and the State each relied on *Aguirre v. State*, 22 S.W.3d 463 (Tex.Crim. App. 1999), which addressed whether a culpable mental state was required in an El Paso ordinance that regulated adult businesses, but was silent about whether a culpable mental state was required. *Id.* at 463. In *Aguirre*, the Court of Criminal Appeals set out guidelines for determining whether a statute plainly dispenses with a mental state element. *Id.* at 471–477.

■■■ An affirmative statement in the statute, that the conduct is a crime though done without fault, would be conclusive. *Id.* at 471. In this case, as in *Aguirre*, there is no such statement. The Court of Criminal Appeals noted that "the typical strict liability statute is 'empty'—it simply says nothing about a mental state," *id.*, but then observed that, under the legislative history of section 6.02, the mere omission of a mental element cannot be construed to plainly dispense with a mental element and thus leaves a presumption that one is required. *Id.* at 471–72. This triggers an inquiry by the trial court whether an intent to dispense with the requirement of a culpable mental state is manifested by other features of the statute. *Id.* at 472.

■■■ One such feature is whether the statute makes a strict liability offense a crime. *Id.* Strict liability is generally associated with civil violations that incur only a fine. *Id.* In Texas, however, all offenses are classified as crimes. *Id.* at 472–73. This supports the general presumption against strict liability. *Id.* This presumption against strict liability becomes stronger for the offenses punishable by jail time.

■■■ The language of the statute is also to be considered. *Id.* If, for instance, the statute defines criminal offenses in four sections, three of which use a word such as "knowingly" and the fourth uses no such word, it is a clear implication that the legislature intended to dispense with a mental element in that section. *Id.* at 472–73. Because none of the sections defining offenses in section 365.012 contains the word "knowingly" or any other word indicating a culpable mental state, there is no such clear differentiation in the illegal dumping statute. While it could be argued that the use of language such as "dispose," "allow," "permit," and "transport" connote knowledge with respect to one's actions, there simply is no culpable mental state that encompassed the entire offense, much less, a culpable mental state in some portions, but not others.

■■■ Another factor is whether the offense is considered *malum in se* or *malum prohibitum*. *Id.* at 473. Strict liability offenses must be *malum prohibitum*. *Id.* The opposite is not necessarily true, as illustrated by many regulatory crimes, such as drug violations. Although illegal dumping is *malum prohibitum*, that classification neither requires nor precludes strict liability.

■■■ In more recent cases, the most important feature for determining whether a statute plainly dispenses with a mental

element is the subject of the statute, with strict liability traditionally associated with the protection of public health, safety, or welfare. *Id.* at 473–74. On this point, the *Aguirre* court quoted extensively from a United States Supreme Court decision, *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952):

Many of these offenses are not in the nature of positive aggressions or invasions with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity.... The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime.

*Aguirre,* at 474–75 (quoting *Morissette,* 342 U.S. at 255–56, 72 S.Ct. at 246).

The Court of Criminal Appeals noted its own decisions upholding statutes that impose strict liability on offenses affecting public health and safety: *American Plant Food Corp. v. State,* 587 S.W.2d 679 (Tex. Crim.App.1979) (water pollution); *Owen v. State,* 525 S.W.2d 164 (Tex.Crim.App.1975) (driving while intoxicated); *Neill v. State,* 154 Tex.Crim. 549, 229 S.W.2d 361, 363 (1950) (sale of horsemeat for human consumption); *Neill v. State,* 225 S.W.2d 829, 830 (Tex.Crim.App.1949) (adulterated food); *Goodwin v. State,* 63 Tex.Crim. 140, 138 S.W. 399, 400 (1911) (speeding). *Aguirre,* at 475 n. 47.

■ The illegal dumping statute clearly deals with public health and safety. Disposal of litter and other solid waste is akin to air pollution and water pollution, prohibitions against which have been held to constitute strict liability offenses. *See American Plant Food Corp.,* 587 S.W.2d at 685 (water pollution); *Exxon Co., U.S.A. v. State,* 646 S.W.2d 536, 538 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd) (air pollution). We observe, however, that in the case of the particular water pollution offense in *American Plant Food,* the legislature has reenacted the provision as section 7.147 of the Texas Water Code and expressly provided that the offense may be prosecuted without alleging or proving any culpable mental state. TEX. WATER CODE ANN. § 7.147(a), (b) (Vernon 2000). More importantly for our analysis, the rationale of the Court of Criminal Appeals in *American Plant Food* was based on legislative history and disclosing that a former version had included a culpable mental state that was later omitted, and thus clarified the legislative intent to impose strict liability. *American Plant Food,* 587 S.W.2d at 685–86.

As for air pollution, we observe that our *Exxon* case dealt with a violation that today bears no criminal or civil penalty. *See Exxon,* 646 S.W.2d at 536–38; TEX. HEALTH & SAFETY CODE ANN. § 382.085 (Vernon 1992); TEX.. WATER CODE ANN. § 7.177 (Vernon 2000). The air pollution offenses that impose criminal responsibility all contain culpable mental states. TEX. WATER CODE ANN. § 7.177. Therefore, the former decisions upholding strict liability for air

and water pollution offenses are no longer persuasive, much less controlling.

In addition to the guidance provided by section 6.02, the *Aguirre* court cited six factors collected by Professor LaFave that may be considered of importance in deciding whether the legislature meant to impose liability without fault:

> (1) The legislative history of the statute or its title or context.... (2) The severity of the punishment.... Other things being equal, the greater the possible punishment, the more likely some fault is required; and, conversely, the lighter the punishment, the more likely the legislature meant to impose liability without fault. (3) The seriousness of the harm to the public which may be expected to follow from the forbidden conduct.... Other things being equal, the more serious the consequences to the public, the more likely the legislature meant to impose liability without regard to fault, and vice versa. (4) The defendant's opportunity to ascertain the true facts.... (5) The difficulty prosecuting officials would have in proving mental state for this type of crime. The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced. (6) The number of prosecutions to be expected.... The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go in to the issue of fault; the greater the number of prosecutions, the more likely the legislature meant to impose liability without regard to fault.

*Aguirre,* at 475–76

■ Section 365.012(a) is in the Texas Health and Safety Code's Title 5, entitled "Sanitation and Environmental Quality" and bears the heading, "Illegal Dumping; Criminal Penalties." This factor indicates that the statute is one affecting public health and safety and thus contributes to the notion that the legislature is plainly

dispensing with a culpable mental state for the offense.

The illegal dumping statute categorizes the offense in various classes of misdemeanor that depend on the weight or volume of the waste: Class C for waste weighing 15 pounds or less or having a volume of 13 gallons or less; Class B for waste weighing more than 15 pounds, but less than 500 pounds, or having a volume of more than 13 gallons, but less than 100 cubic feet; and Class A for waste weighing 500 pounds or more or having a volume of 100 cubic feet or more. TEX. HEALTH & SAFETY CODE ANN. § 365.012(d)-(f) (Vernon Supp.2000). In this case, appellant is charged with a Class B misdemeanor, which has a range of punishment of confinement in jail for a term not to exceed 180 days or a fine not to exceed $2,000, or both. TEX. PEN. CODE ANN. § 12.22 (Vernon 1994).

■ In *Aguirre,* the court stated that, because the ordinance provided punishment by a fine only, it was consistent with the ordinance imposing strict liability. *See Aguirre,* at 476. This is also consistent with the Supreme Court's observation in *Morissette* that penalties for strict liability offenses are usually small and do not damage an offender's reputation. *Aguirre,* at 474. However, *Aguirre* did not establish that absence of confinement as punishment establishes a bright line test for determining whether the statute was dispensing with a mental state element. In fact, a Texas case that construes a statute as imposing strict liability involved a statute in which confinement was a possible punishment. *See Owen,* 525 S.W.2d at 164 (appellant assessed 30 days in jail for driving while intoxicated). Nevertheless, we consider the seriousness of the possible punishment to be a particularly weighty factor that militates against strict liability.

Comparing relative seriousness of harm to the public, an illegal dumping statute proscribes conduct not nearly as dangerous as driving while intoxicated. Thus, even though the statute here involves pub-

lic health and safety, it is not of such great importance to society as to automatically require strict liability.

The Court of Criminal Appeals noted the difference between offenses aimed at violators in the business, who would have knowledge of the accepted standards for conducting the activity, here the disposal of trash, and offenses directed at all persons. *Aguirre,* at 476–77. Appellant is merely an ordinary citizen, and the statute in question does not direct itself solely to businesses. This factor favors interpreting the statute as requiring a culpable mental state.

It is not clear that requiring a culpable mental state of at least "recklessly" would make illegal dumping offenses more difficult to prove. It is also difficult to predict the number of prosecutions that might be expected under the illegal dumping statute, much less what effect the addition of a culpable mental state of at least "recklessly" would have on that number. Thus, these are neutral factors in our analysis.

The illegal dumping statute is devoid of express language that prescribes a culpable mental state, but this cannot be construed to plainly dispense with a mental element and leaves a presumption that one is required. Therefore, other features of the statute must be examined to determine whether the legislature intended to dispense with the requirement of culpable mental state. The subject of the statute is protection of public health, safety, or welfare, but the importance of this feature is diminished by the relatively minor danger posed by illegal dumping. We are particularly cognizant of the severity of the punishment which may be as high as a Class A misdemeanor bearing up to one year's confinement in jail. When we compare the illegal dumping statute with the ordinance in *Aguirre,* which carried only a fine, yet was found to require a culpable mental state, we are constrained to hold that a culpable mental state of at least "recklessly" is likewise required for the illegal dumping provisions under section 365.012.

## Conclusion

Applying the guiding rules and principles of *Aguirre,* we hold that the trial court abused its discretion in denying appellant's pretrial petition for writ of habeas corpus. Accordingly, we reverse the trial court's order denying relief and order the information dismissed.