**Ruth Maria ROBLEDO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–02–00596–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 12, 2003.

**152**

Richard B. Kuniansky, Kuniansky & Rozan, Houston, for appellant.

Dan McCrory, Assistant District Attorney, William J. Delmore, III, Chief Prosecutor, Appellate Division, Charles A. Rosenthal, Jr., District Attorney-Harris County, Houston, for appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

Appellant, Ruth Maria Robledo, was convicted of violating a City of Houston ordinance requiring operators, agents, and employees of adult arcades to ensure that a direct line of sight is maintained between the manager's station of the arcade and the interior of the arcade viewing booths at all times that any patron is present. *See* HOUSTON, TEX., CODE OF ORDINANCES, ch. 28, art. II, § 28–101(a) (1997). The trial court found appellant guilty of this Class A misdemeanor and assessed punishment at one day's confinement. On appeal, appellant challenges her conviction by arguing that (1) the State failed to introduce sufficient evidence to prove that she had the requisite mental state to commit the offense alleged in the information, and (2) the State improperly charged her with violating section 28–101 because that ordinance

does not apply to her employer. We affirm the judgment of the trial court.

## Background

Adult Video Megaplexxx (AVM) is a retail business, located in Harris County, that sells videotapes, compact discs, and novelties of an adult nature. Additionally, AVM's store contains a number of "adult arcades"—small booths containing screens, upon which patrons watch portions of sexually explicit movies in exchange for a fee. AVM has a valid Sexually Oriented Business license but does not have a valid Adult Arcade license from the City of Houston. AVM has filed two such arcade applications with the City of Houston, but both applications were denied after on-site inspections revealed that AVM's physical layout did not comply with City ordinances requiring that (1) adult arcades have designated manager's stations no greater than 32 square feet in area and (2) adult arcade managers maintain a direct line of sight from their designated manager's station into each of the private arcade booths. *See* HOUSTON, TEX., CODE OF ORDINANCES, ch. 28, art. II, §§ 28–92(c), –101(a), –101(b) (1997). Appellant is an employee of AVM and holds a manager's permit, which she testified she was required to obtain to operate the AVM cash register.

On January 13, 2002, two undercover officers from the Houston Police Department posed as patrons of AVM. Appellant was the manager on duty at the time the officers entered AVM. The officers ascertained that there was not a direct line of sight into the arcade booths from the area in which appellant was working and placed appellant under arrest for violating the line-of-sight ordinance.

### Culpable Mental State

In her first point of error, appellant argues that the State failed to establish

that she had the culpable mental state required for her conviction.[1]

### Standard of Review

Appellant does not specify whether she is attacking the legal or the factual sufficiency of the evidence regarding her mental state. Because appellant argues that the State failed to present any evidence of a culpable mental state whatsoever, and because appellant asks for an acquittal, we construe appellant's argument on this point as a legal sufficiency challenge. *Cf. Hegar v. State*, 11 S.W.3d 290, 297 (Tex. App.-Houston [1st Dist.] 1999, no pet.) (construing complaint as a factual-sufficiency challenge where reversal was only relief requested). A legal sufficiency challenge requires us to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 563 (Tex.Crim.App.2000).

### Proof Required

Where no mental state is specified in the statute, section 6.02 of the Texas Penal Code provides a default rule that, unless the definition of the offense "plainly dispenses with any mental element," if a mental state is not specified in a statute, "intent, knowledge, or recklessness suffices to establish criminal responsibility." TEX. PEN.CODE. ANN. § 6.02(b)-(c) (Vernon 2003); *Ex parte Weise*, 23 S.W.3d 449, 452 (Tex. App.-Houston [1st Dist.] 2000), *rev'd on other grounds*, 55 S.W.3d 617 (Tex.Crim. App.2001).

■ We first examine whether the ordinance in question, section 28–101, "plainly dispenses with any mental element."

The Texas Court of Criminal Appeals has set out guidelines to be used in determining this issue. *See Aguirre v. State*, 22 S.W.3d 463, 471–77 (Tex.Crim.App.1999). First, we look to the ordinance to see whether it contains an "affirmative statement ... that the conduct is a crime though done without fault." *Id.* at 471. We are to look for "a manifest intent to dispense with the requirement of a culpable mental state," keeping in mind that "the silence of a statute about whether a culpable mental state is an element of the offense leaves a presumption that one is." *Id.* at 472. Because no express, manifest intent to dispense with a mental state exists on the face of the ordinance before us, we take the next step in the *Aguirre* inquiry—we examine "whether such an intent is manifested by other features of the statute." *See id.*

One such feature is whether the statute makes a strict liability offense a crime. *Id.; Weise*, 23 S.W.3d at 452. This Court stated in *Weise* that "the presumption against strict liability becomes stronger for offenses punishable by jail time." *Weise*, 23 S.W.3d at 452. While we acknowledged in *Weise* that the severity of punishment does not provide a "bright line test for determining whether the statute [dispenses] with a mental state element," we stated that "nevertheless, we consider the seriousness of the possible punishment to be a particularly weighty factor that militates against strict liability." 23 S.W.3d at 454.

■ Further, whether the prohibited action is classified as *malum in se* or *malum prohibitum* may be a factor in determining whether the statute was in-

---

1. Although appellant filed a pre-trial motion to quash the information, the motion filed did not address the same issues appellant now raises on appeal. In addition, appellant did not object to the information at trial. Accord-ingly, the only issue before us is whether the State was required to prove that appellant had a culpable mental state, and if so, whether the evidence presented at trial was sufficient to show such a mental state.

tended to impose strict liability. *Aguirre*, 22 S.W.3d at 473. The *Aguirre* court acknowledged, however, that a more important factor might be the relationship of the offense to "public mores and resentment." *Id.* Finally, the *Aguirre* court listed other features useful in determining whether the statute was intended to impose liability without fault, including:

(1) The legislative history of the statute or its title or context . . . ;

(2) The severity of the punishment provided . . . ;

(3) The seriousness of harm to the public which may be expected to follow from the forbidden conduct . . . ;

(4) The defendant's opportunity to ascertain the true facts . . . [where the statute may] impose liability on one who was without fault because he lacked knowledge of these facts;

(5) The difficulty prosecuting officials would have in proving a mental state for this type of crime; and

(6) The number of prosecutions to be expected. . . .

*Aguirre*, 22 S.W.3d at 476–76 (citing 1 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW 342–44 (2d ed.1986)).

In *Aguirre*, the Court of Criminal Appeals examined an El Paso adult business ordinance making it an offense to own, operate, or conduct any business in an adult bookstore, adult motion picture theater, or nude live entertainment club within 1000 feet of another such business, or a church, school, residence, or park adjacent to a residential district. *Aguirre*, 22 S.W.3d at 476. The Court of Criminal Appeals examined that statute and found some features of the statute were consistent with imposing strict liability; the punishment imposed was only a fine; the ordinance applied only to persons conducting business in a certain trade; prosecuting

officials would have some difficulty in proving that an employee of such a business was aware of its location; and it was, "in some sense, an ordinance to protect public safety or welfare." *Id.* However, the Court of Criminal Appeals also noted that the ordinance was "hardly in the class of public-safety statutes that we have found to impose strict liability, such as those that punish such dangerous activities as speeding, adulteration of food, driving while intoxicated, and pollution of water." *Id.* Further, the court noted that, while it encountered some difficulty in categorizing the offense in *Aguirre* as *malum in se* and in determining the extent to which the offense was supported by public mores, "it is probably safe to say [in this instance] that the moral factor is significantly stronger than for the usual 'public welfare' offenses." *Id.* at 477. Taking these factors, as well as the low numbers of prosecutions expected, into consideration, the Court of Criminal Appeals held that it was unable to conclude that the El Paso ordinance manifested an intent to dispense with a culpable mental state, and accordingly concluded that one was required. *Id.*

■ Turning to the ordinance here, we first note that, unlike the statute in *Aguirre*, because the violation of the ordinance here is a class A misdemeanor, it is punishable by up to one year of jail time. Further, the offense at issue in this case, like the one in *Aguirre*, relates to the regulation of sexually oriented businesses and, as such, is more strongly related to the public mores than the usual regulatory offenses. The harm to the public posed by repeated violations of the ordinance is relatively contained—the line of sight maintained between the manager's station and arcade booths diminishes the likelihood of obscene acts taking place within the booths, but the general public is not impacted by the actions of booth patrons.

Finally, the number of prosecutions for violations of this ordinance is likely to be relatively few. Taking these factors, as well as the possible incarceration for violating the ordinance, into account, we find that the ordinance in question does not "manifest an intent to dispense with a culpable mental state" that is sufficient to overcome the presumption that a mental state is required. *Id.* at 477. Accordingly, in order to support appellant's conviction, the State was required to present evidence which established that appellant violated the ordinance with a mental state that was at least reckless. *See* TEX. PEN.CODE. ANN. § 6.02(b)-(c).

### Sufficiency

 Appellant contends the State failed to present evidence showing that she had the required culpable mental state because the State failed to establish that appellant was aware that the city ordinance imposed a duty upon adult arcade employees to maintain a line of sight from the manager's stations into the viewing booths. It is well settled that ignorance of the law is not a defense to its violation. *See Almanza v. State,* 365 S.W.2d 360, 362 (Tex.Crim.App.1963). Appellant testified at trial that (1) she had never been informed about the ordinance requiring a direct line of sight into the arcade booths; (2) although she had been required to obtain a manager's permit prior to operating the AVM cash register, and she had taken the necessary steps to obtain such a manager's permit, she had never had any training on the sexually oriented business ordinances, nor was she aware what permits AVM was required to have; and (3) she did not intentionally violate any of the laws of the City of Houston. Evidence presented by the State at trial showed that (1) the direct line of sight from the manager's station into the arcades was obstructed by intervening walls, doors, and display racks; (2) appellant had been employed by AVM for a period of time long enough to allow her to obtain a manager's permit in order to operate the cash register and be trained to act as a manager for AVM; and (3) that appellant was the sole manager on duty at the time the police officers entered the store. Culpable mental state is most commonly grounded upon inferences to be drawn by the factfinder from the attendant circumstances. *Lane v. State,* 763 S.W.2d 785, 787 (Tex.Crim.App.1989). Conclusions regarding a culpable mental state may be inferred from the acts, words, and conduct of the accused. *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App.1982). We find that the evidence presented, when viewed in the light most favorable to the conviction, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that appellant knew that her direct line of sight into the arcade booths was obstructed, and that she accordingly possessed the requisite culpable mental state needed to support her conviction for violation of the ordinance. We overrule appellant's first point of error.

### Applicability of Section 28–101

In her second point of error, appellant argues that her conviction cannot be supported because AVM is not governed by the ordinance she was charged with violating. Appellant asserts that, because the arcade permit applications were denied, she was under no duty to maintain a direct line of sight into the arcade viewing booths.

Appellant is essentially challenging the sufficiency of the evidence to support an element of the ordinance she is charged with violating, and she requests relief in the form of an acquittal. Accordingly, we construe her challenge as an attack on the legal sufficiency of the evidence presented by the State at trial. *Cf. Hegar,* 11 S.W.3d

at 297. We apply the usual standards of review. *See King*, 29 S.W.3d at 563.

Section 28–92(c) of the Houston Code of Ordinances requires that applications filed for adult arcade permits be accompanied by a diagram of the arcade establishment, "showing a plan thereof specifying the location of one or more manager's stations." HOUSTON, TEX., CODE OF ORDINANCES, ch. 28, art. II, § 28–92(c) (1997). Section 28–101, the ordinance in question, states:

(a) *If an adult arcade or adult mini-theatre has one (1) manager's station designated pursuant to section 28–92(c) of this Code, then the interior of the adult arcade or adult mini-theatre shall be configured in such a manner that there is an unobstructed view of every area of the adult arcade or adult mini-theatre to which any patron is permitted access for any purpose from that manager's station.* If an adult arcade or mini-theatre has two or more manager's stations designated pursuant to section 29–92(c) of this Code, then the interior of the adult arcade or adult mini-theatre shall be configured in such a manner that there is an unobstructed view of each area of the adult arcade or mini-theatre to which any patron is permitted access for any purpose from at least one of the manager's stations. *The view required in this subsection must be by direct line of sight from the manager's station.*

(b) It shall be the duty of the owners and operators, and *it shall also be the duty of any agents and employees present in an adult arcade or adult mini-theatre, to ensure that the view area specified in subsection (a) remains unobstructed by any merchandise, display racks or other materials* at all times that any patron is present in the adult arcade or adult mini-theatre and to ensure that no patrons permitted access

to any area of the adult arcade or adult mini-theatre which has been designated as an area which patrons will not be permitted in the plan filed pursuant to section 28–92(c) of this Code.

HOUSTON, TEX., CODE OF ORDINANCES, ch. 28, art. II, § 28–101 (1997) (emphasis added). Additionally, the Houston Code of Ordinances also contains an ordinance prohibiting the operation of adult arcades without a validly issued permit. *See* HOUSTON, TEX., CODE OF ORDINANCES, ch. 28, art. II, § 28–91 (1997). Appellant argues that she should have been charged with violating section 28–91, not section 29–101. Appellant admits that AVM was operating without an adult arcade permit, and she contends that AVM's status as an unlicensed arcade exempts it from compliance with the other parts of chapter 28, which contains ordinances governing the layout, lighting, construction, and operation of adult arcades within the City of Houston.

The issue before us are (1) whether the ordinance applied to appellant and, (2) if it did, whether she violated it. We view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King*, 29 S.W.3d at 563. Here, we must determine whether the State presented sufficient evidence to enable a rational trier of fact to find beyond a reasonable doubt that appellant violated the ordinance requiring adult arcade employees to maintain a direct line of sight from a manager's station, as designated on permit applications filed with the City Houston, into arcade viewing booths. We begin with the ordinance itself.

The Court of Criminal Appeals has dictated the rules of construction used in examining criminal statutes as follows:

We normally construe a statute according to its "plain [textual] meaning" with-

out resort to extratextual sources. We will, however, resort to extratextual sources such as legislative history to construe a statute if we decide that the statute is ambiguous or that construing the statute according to its "plain [textual] meaning" will lead to "absurd consequences." These general rules of statutory construction are aids to effect our overriding constitutional duty to effectuate what the Legislature intended when it enacted the statute.

*Logan v. State,* 89 S.W.3d 619, 627 (Tex. Crim.App.2002) (internal citations omitted). Similarly, we have previously held that "in construing an ordinance, a court's primary responsibility is to carry out the intentions of the municipal legislative body." *Purnell v. State,* 921 S.W.2d 432, 435 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd).

The ordinance in question, section 28–101, is part of a regulatory scheme aimed at the adult arcade business within the City of Houston. The Houston City Council, in enacting chapter 28 of the Houston Code of Ordinances, stated that the scheme included "comprehensive regulations regarding the interior of adult arcades, which are codified in Article II of chapter 28 of the Code of Ordinances" and that the "City has a substantial public concern that its residents be protected from criminal activity and be protected from casual sexual activity that facilitates the spread of sexually transmitted diseases." Houston, Tex., Ordinance No.97–75 (Jan. 15, 1997). Minutes of the City Council's meetings reveal the Council's concern regarding the regulation of unlicensed adult businesses and the Council's intention that the ordinances apply to both licensed and unlicensed businesses, thus enabling police to increase enforcement of the ordinances among unlicensed adult businesses. Houston, Tex. City Council,

*Minutes of Regular City Council Meeting, January 14, 1997,* No. 97–55–1 (1997).

Among the provisions of chapter 28 are an ordinance making it unlawful to operate, own, manage, or conduct business in any adult arcade unless an adult arcade permit has been issued and posted (section 28–91(a), (b)); several ordinances detailing the steps in the permit application and permit renewal processes (sections 28–92, 28–93, 28–94); ordinances prohibiting sexual intercourse, other lewd or indecent acts, or solicitation of lewd acts or sexual intercourse in the arcades (section 29–98); and ordinances specifying the required elements of construction, illumination levels, and line-of-sight requirements for the adult arcade areas (sections 28–101, 28–102, 28–103). Houston, Tex., Code of Ordinances, ch. 28, art. II, §§ 28–91, –92, –93, –94, –98, –101, –102, –103 (1997). Some of these ordinances are written in a format similar to section 28–101 and contain cross-references to the permit application process and other ordinances. Other provisions, however, do not contain internal cross-references to the permit application process or other ordinances in this section. For example, section 28–103, setting forth the minimum brightness levels for the interior lighting in adult arcades and imposing a duty upon arcade employees and managers to maintain minimum illumination levels, does not refer to the permit application process or any other ordinance. Houston, Tex., Code of Ordinances, ch. 28, art. II, § 28–103 (1997).

■ If we were to accept appellant's argument that, because AVM did not have an adult arcade permit issued by the City of Houston, it is therefore not required to adhere to section 28–101's line-of-sight ordinance, such a holding would mean that only those ordinances which do not contain internal cross-references to the permit application process could be applied to adult arcades operating without a permit. Ar-

cades such as AVM would then be vulnerable to prosecution only for operating without a permit, for violations of construction ordinances, and for lighting violations. Under such a scheme, AVM would remain immune from prosecution for other infractions because it had chosen to operate without a permit.

Such a scheme would reward AVM for operating illegally by sheltering it from the full spectrum of prosecution to which legally permitted adult arcades are exposed, thus producing a windfall for arcades that chose to operate illegally by protecting them from prosecution for operating improperly. We do not believe such a result is logical, nor is it consistent with the goals expressed by the Houston City Council. Accordingly, we find that the State presented legally sufficient evidence to allow a rational trier of fact to find that the ordinance in question, section 28–101, was properly applied to appellant and imposed a duty upon appellant to maintain a line of sight from the manager's station into the arcade viewing booths.[2] We overrule appellant's second point of error.

### Conclusion

We affirm the judgment of the trial court.

---

**2.** Appellant contends that applying section 28–102 to adult arcades such as AVM that operate without a permit produces "absurd" results. Specifically, appellant illustrates the problems that might arise in applying section 28–102 to arcades that have never filed *any* permit application. Appellant further questions the effect of an adult arcade filing several unsuccessful permit applications, each with a different manager's station designated. Appellant points out the difficulties, in such a case, of selecting which manager's station would be used to determine whether a line of sight existed into the arcade booths. Here, however, we need only look to the plain text of the ordinance itself. The ordinance states that adult arcades are required to maintain a clear line of sight from "the manager's station designated in the application filed pursuant to 28–92(c)." The facts of the case before us require us to find that the statute applies to AVM—AVM had filed two virtually identical applications, and a manager's station was identified on the last application filed. Both applications were submitted as trial exhibits. The hypothetical arguments posed by appellant in her brief do not accurately reflect the facts of this case.