Opinion issued June 12, 2003.












  In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00596-CR




RUTH MARIA ROBLEDO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law 1
Harris County, Texas
Trial Court Cause No. 1096315




O P I N I O N

          Appellant, Ruth Maria Robledo, was convicted of violating a City of Houston
ordinance requiring operators, agents, and employees of adult arcades to ensure that
a direct line of sight is maintained between the manager’s station of the arcade and
the interior of the arcade viewing booths at all times that any patron is present. See
Houston, Tex., Code of Ordinances, ch. 28, art. II, § 28-101(a) (1997). The trial
court found appellant guilty of this Class A misdemeanor and assessed punishment
at one day’s confinement. On appeal, appellant challenges her conviction by arguing
that (1) the State failed to introduce sufficient evidence to prove that she had the
requisite mental state to commit the offense alleged in the information, and (2) the
State improperly charged her with violating section 28-101 because that ordinance
does not apply to her employer. We affirm the judgment of the trial court.
Background

          Adult Video Megaplexxx (AVM) is a retail business, located in Harris County,
that sells videotapes, compact discs, and novelties of an adult nature. Additionally,
AVM’s store contains a number of “adult arcades”—small booths containing screens,
upon which patrons watch portions of sexually explicit movies in exchange for a fee. 
AVM has a valid Sexually Oriented Business license but does not have a valid Adult
Arcade license from the City of Houston. AVM has filed two such arcade
applications with the City of Houston, but both applications were denied after on-site
inspections revealed that AVM’s physical layout did not comply with City ordinances
requiring that (1) adult arcades have designated manager’s stations no greater than
32 square feet in area and (2) adult arcade managers maintain a direct line of sight
from their designated manager’s station into each of the private arcade booths. See
Houston, Tex., Code of Ordinances, ch. 28, art. II, §§ 28-92(c), -101(a), -101(b)
(1997). Appellant is an employee of AVM and holds a manager’s permit, which she
testified she was required to obtain to operate the AVM cash register.
           On January 13, 2002, two undercover officers from the Houston Police
Department posed as patrons of AVM. Appellant was the manager on duty at the
time the officers entered AVM. The officers ascertained that there was not a direct
line of sight into the arcade booths from the area in which appellant was working and
placed appellant under arrest for violating the line-of-sight ordinance. 
Culpable Mental State
          In her first point of error, appellant argues that the State failed to establish that
she had the culpable mental state required for her conviction.


 
Standard of Review
Appellant does not specify whether she is attacking the legal or the factual sufficiency
of the evidence regarding her mental state. Because appellant argues that the State
failed to present any evidence of a culpable mental state whatsoever, and because
appellant asks for an acquittal, we construe appellant’s argument on this point as a
legal sufficiency challenge. Cf. Hegar v. State, 11 S.W.3d 290, 297 (Tex.
App.—Houston [1st Dist.] 1999, no pet.) (construing complaint as a factual-sufficiency challenge where reversal was only relief requested). A legal sufficiency
challenge requires us to determine whether, after viewing the evidence in the light
most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. King v. State, 29 S.W.3d
556, 563 (Tex. Crim. App. 2000).
Proof Required
          Where no mental state is specified in the statute, section 6.02 of the Texas
Penal Code provides a default rule that, unless the definition of the offense “plainly
dispenses with any mental element,” if a mental state is not specified in a statute,
“intent, knowledge, or recklessness suffices to establish criminal responsibility.” 
Tex. Pen. Code. Ann. § 6.02 (b)-(c) (Vernon 2003); Ex parte Weise, 23 S.W.3d 449,
452 (Tex. App.—Houston [1st Dist.] 2000), rev’d on other grounds, 55 S.W.3d 617
(Tex. Crim. App. 2001). 
          We first examine whether the ordinance in question, section 28-101, “plainly
dispenses with any mental element.” The Texas Court of Criminal Appeals has set
out guidelines to be used in determining this issue. See Aguirre v. State, 22 S.W.3d
463, 471-77 (Tex. Crim. App. 1999). First, we look to the ordinance to see whether
it contains an “affirmative statement . . . that the conduct is a crime though done
without fault.” Id. at 471. We are to look for “a manifest intent to dispense with the
requirement of a culpable mental state,” keeping in mind that “the silence of a statute
about whether a culpable mental state is an element of the offense leaves a
presumption that one is.” Id. at 472. Because no express, manifest intent to dispense
with a mental state exists on the face of the ordinance before us, we take the next step
in the Aguirre inquiry—we examine “whether such an intent is manifested by other
features of the statute.” See id. 
          One such feature is whether the statute makes a strict liability offense a crime. 
Id.; Weise, 23 S.W.3d at 452. This Court stated in Weise that “the presumption
against strict liability becomes stronger for offenses punishable by jail time.” Weise,
23 S.W.3d at 452. While we acknowledged in Weise that the severity of punishment
does not provide a “bright line test for determining whether the statute [dispenses]
with a mental state element,” we stated that “nevertheless, we consider the
seriousness of the possible punishment to be a particularly weighty factor that
militates against strict liability.” 23 S.W.3d at 454. 
          Further, whether the prohibited action is classified as malum in se or malum
prohibitum may be a factor in determining whether the statute was intended to impose
strict liability. Aguirre, 22 S.W.3d at 473. The Aguirre court acknowledged,
however, that a more important factor might be the relationship of the offense to
“public mores and resentment.” Id. Finally, the Aguirre court listed other features
useful in determining whether the statute was intended to impose liability without
fault, including: 
(1) The legislative history of the statute or its title or context . . .;
 
(2) The severity of the punishment provided . . .;
 
(3) The seriousness of harm to the public which may be expected to
follow from the forbidden conduct . . .;
 
(4) The defendant’s opportunity to ascertain the true facts . . . [where the
statute may] impose liability on one who was without fault because he
lacked knowledge of these facts;
 
(5) The difficulty prosecuting officials would have in proving a mental
state for this type of crime; and
 
(6) The number of prosecutions to be expected . . . .

 Aguirre, 22 S.W.3d at 476-76 (citing 1 Wayne R. LaFave & Austin W. Scott, Jr.,
Substantive Criminal Law 342-44 (2d ed. 1986)).
          In Aguirre, the Court of Criminal Appeals examined an El Paso adult
businesses ordinance making it an offense to own, operate, or conduct any business
in an adult bookstore, adult motion picture theater, or nude live entertainment club
within 1000 feet of another such business, or a church, school, residence, or park
adjacent to a residential district. Aguirre, 22 S.W.3d at 476. The Court of Criminal
Appeals examined that statute and found some features of the statute were consistent
with imposing strict liability; the punishment imposed was only a fine; the ordinance
applied only to persons conducting business in a certain trade; prosecuting officials
would have some difficulty in proving that an employee of such a business was aware
of its location; and it was, “in some sense, an ordinance to protect public safety or
welfare.” Id. However, the Court of Criminal Appeals also noted that the ordinance
was “hardly in the class of public-safety statutes that we have found to impose strict
liability, such as those that punish such dangerous activities as speeding, adulteration
of food, driving while intoxicated, and pollution of water.” Id. Further, the court
noted that, while it encountered some difficulty in categorizing the offense in Aguirre
as malum in se and in determining the extent to which the offense was supported by
public mores, “it is probably safe to say [in this instance] that the moral factor is
significantly stronger than for the usual ‘public welfare’ offenses.” Id. at 477. 
Taking these factors, as well as the low numbers of prosecutions expected, into
consideration, the Court of Criminal Appeals held that it was unable to conclude that
the El Paso ordinance manifested an intent to dispense with a culpable mental state,
and accordingly concluded that one was required. Id.
          Turning to the ordinance here, we first note that, unlike the statute in Aguirre,
because the violation of the ordinance here is a class A misdemeanor, it is punishable
by up to one year of jail time. Further, the offense at issue in this case, like the one
in Aguirre, relates to the regulation of sexually oriented businesses and, as such, is
more strongly related to the public mores than the usual regulatory offenses. The
harm to the public posed by repeated violations of the ordinance is relatively
contained—the line of sight maintained between the manager’s station and arcade
booths diminishes the likelihood of obscene acts taking place within the booths, but
the general public is not impacted by the actions of booth patrons. Finally, the
number of prosecutions for violations of this ordinance is likely to be relatively few. 
Taking these factors, as well as the possible incarceration for violating the ordinance,
into account, we find that the ordinance in question does not “manifest an intent to
dispense with a culpable mental state” that is sufficient to overcome the presumption
that a mental state is required. Id. at 477. Accordingly, in order to support
appellant’s conviction, the State was required to present evidence which established
that appellant violated the ordinance with a mental state that was at least reckless. 
See Tex. Pen. Code. Ann. § 6.02 (b)-(c).
 
Sufficiency
          Appellant contends the State failed to present evidence showing that she had
the required culpable mental state because the State failed to establish that appellant
was aware that the city ordinance imposed a duty upon adult arcade employees to
maintain a line of sight from the manager’s stations into the viewing booths. It is well
settled that ignorance of the law is not a defense to its violation. See Almanza v.
State, 365 S.W.2d 360, 362 (Tex. Crim. App. 1963). Appellant testified at trial that
(1) she had never been informed about the ordinance requiring a direct line of sight
into the arcade booths; (2) although she had been required to obtain a manager’s
permit prior to operating the AVM cash register, and she had taken the necessary
steps to obtain such a manager’s permit, she had never had any training on the
sexually oriented business ordinances, nor was she aware what permits AVM was
required to have; and (3) she did not intentionally violate any of the laws of the City
of Houston. Evidence presented by the State at trial showed that (1) the direct line
of sight from the manager’s station into the arcades was obstructed by intervening
walls, doors, and display racks; (2) appellant had been employed by AVM for a
period of time long enough to allow her to obtain a manager’s permit in order to
operate the cash register and be trained to act as a manager for AVM; and (3) that
appellant was the sole manager on duty at the time the police officers entered the
store. Culpable mental state is most commonly grounded upon inferences to be
drawn by the factfinder from the attendant circumstances. Lane v. State, 763 S.W.2d
785, 787 (Tex. Crim. App. 1989). Conclusions regarding a culpable mental state may
be inferred from the acts, words, and conduct of the accused. Dues v. State, 634
S.W.2d 304, 305 (Tex. Crim. App. 1982). We find that the evidence presented, when
viewed in the light most favorable to the conviction, was sufficient for a rational trier
of fact to conclude beyond a reasonable doubt that appellant knew that her direct line
of sight into the arcade booths was obstructed, and that she accordingly possessed the
requisite culpable mental state needed to support her conviction for violation of the
ordinance. We overrule appellant’s first point of error. 
Applicability of Section 28-101
          In her second point of error, appellant argues that her conviction cannot be
supported because AVM is not governed by the ordinance she was charged with
violating. Appellant asserts that, because the arcade permit applications were denied,
she was under no duty to maintain a direct line of sight into the arcade viewing
booths.
          Appellant is essentially challenging the sufficiency of the evidence to support
an element of the ordinance she is charged with violating, and she requests relief in
the form of an acquittal. Accordingly, we construe her challenge as an attack on the
legal sufficiency of the evidence presented by the State at trial. Cf. Hegar, 11 S.W.3d
at 297. We apply the usual standards of review. See King, 29 S.W.3d at 563.
          Section 28-92(c) of the Houston Code of Ordinances requires that applications
filed for adult arcade permits be accompanied by a diagram of the arcade
establishment, “showing a plan thereof specifying the location of one or more
manager’s stations.” Houston, Tex., Code of Ordinances, ch. 28, art. II, § 28-92(c) (1997). Section 28-101, the ordinance in question, states:
(a) If an adult arcade or adult mini-theatre has one (1)
manager’s station designated pursuant to section 28-92(c)
of this Code, then the interior of the adult arcade or adult
mini-theatre shall be configured in such a manner that
there is an unobstructed view of every area of the adult
arcade or adult mini-theatre to which any patron is
permitted access for any purpose from that manager’s
station. If an adult arcade or mini-theatre has two or more
manager’s stations designated pursuant to section 29-92(c)
of this Code, then the interior of the adult arcade or adult
mini-theatre shall be configured in such a manner that there
is an unobstructed view of each area of the adult arcade or
mini-theatre to which any patron is permitted access for
any purpose from at least one of the manager’s stations. 
The view required in this subsection must be by direct line
of sight from the manager’s station.
 
(b) It shall be the duty of the owners and operators, and it
shall also be the duty of any agents and employees present
in an adult arcade or adult mini-theatre, to ensure that the
view area specified in subsection (a) remains unobstructed
by any merchandise, display racks or other materials at all
times that any patron is present in the adult arcade or adult
mini-theatre and to ensure that no patrons permitted access
to any area of the adult arcade or adult mini-theatre which
has been designated as an area which patrons will not be
permitted in the plan filed pursuant to section 28-92(c) of
this Code. 

Houston, Tex., Code of Ordinances, ch. 28, art. II, § 28-101 (1997) (emphasis
added). Additionally, the Houston Code of Ordinances also contains an ordinance
prohibiting the operation of adult arcades without a validly issued permit. See
Houston, Tex., Code of Ordinances, ch. 28, art. II, § 28-91 (1997). Appellant
argues that she should have been charged with violating section 28-91, not section
29-101. Appellant admits that AVM was operating without an adult arcade permit,
and she contends that AVM’s status as an unlicensed arcade exempts it from
compliance with the other parts of chapter 28, which contains ordinances governing
the layout, lighting, construction, and operation of adult arcades within the City of
Houston.  
          The issue before us are (1) whether the ordinance applied to appellant and, (2)
if it did, whether she violated it. We view the evidence in the light most favorable to
the prosecution and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. King, 29 S.W.3d at 563. 
 Here, we must determine whether the State presented sufficient evidence to enable
a rational trier of fact to find beyond a reasonable doubt that appellant violated the
ordinance requiring adult arcade employees to maintain a direct line of sight from a
manager’s station, as designated on permit applications filed with the City Houston,
into arcade viewing booths. We begin with the ordinance itself. 
          The Court of Criminal Appeals has dictated the rules of construction used in
examining criminal statutes as follows: 
We normally construe a statute according to its “plain [textual]
meaning” without resort to extratextual sources. We will, however,
resort to extratextual sources such as legislative history to construe a
statute if we decide that the statute is ambiguous or that construing the
statute according to its “plain [textual] meaning” will lead to “absurd
consequences.” These general rules of statutory construction are aids to
effect our overriding constitutional duty to effectuate what the
Legislature intended when it enacted the statute.

Logan v. State, 89 S.W.3d 619, 627 (Tex. Crim. App. 2002) (internal citations
omitted). Similarly, we have previously held that “in construing an ordinance, a
court’s primary responsibility is to carry out the intentions of the municipal legislative
body.” Purnell v. State, 921 S.W.2d 432, 435 (Tex. App.—Houston [1st Dist.] 1996,
pet. ref’d).
          The ordinance in question, section 28-101, is part of a regulatory scheme aimed
at the adult arcade business within the City of Houston. The Houston City Council,
in enacting chapter 28 of the Houston Code of Ordinances, stated that the scheme
included “comprehensive regulations regarding the interior of adult arcades, which
are codified in Article II of chapter 28 of the Code of Ordinances” and that the “City
has a substantial public concern that its residents be protected from criminal activity
and be protected from casual sexual activity that facilitates the spread of sexually
transmitted diseases.” Houston, Tex., Ordinance No.97-75 (Jan. 15, 1997). Minutes
of the City Council’s meetings reveal the Council’s concern regarding the regulation
of unlicensed adult businesses and the Council’s intention that the ordinances apply
to both licensed and unlicensed businesses, thus enabling police to increase
enforcement of the ordinances among unlicensed adult businesses. Houston, Tex.
City Council, Minutes of Regular City Council Meeting, January 14, 1997, No. 97-55-1 (1997).
          Among the provisions of chapter 28 are an ordinance making it unlawful to
operate, own, manage, or conduct business in any adult arcade unless an adult arcade
permit has been issued and posted (section 28-91(a), (b)); several ordinances detailing
the steps in the permit application and permit renewal processes (sections 28-92, 28-93, 28-94); ordinances prohibiting sexual intercourse, other lewd or indecent acts, or
solicitation of lewd acts or sexual intercourse in the arcades (section 29-98); and 
ordinances specifying the required elements of construction, illumination levels, and
line-of-sight requirements for the adult arcade areas (sections 28-101, 28-102, 28-103). Houston, Tex., Code of Ordinances, ch. 28, art. II, §§ 28-91, -92, -93,- 94,
-98, -101, -102, -103 (1997). Some of these ordinances are written in a format similar
to section 28-101 and contain cross-references to the permit application process and
other ordinances. Other provisions, however, do not contain internal cross-references
to the permit application process or other ordinances in this section. For example,
section 28-103, setting forth the minimum brightness levels for the interior lighting
in adult arcades and imposing a duty upon arcade employees and managers to
maintain minimum illumination levels, does not refer to the permit application
process or any other ordinance. Houston, Tex., Code of Ordinances, ch. 28, art.
II, § 28-103 (1997). 
          If we were to accept appellant’s argument that, because AVM did not have an
adult arcade permit issued by the City of Houston, it is therefore not required to
adhere to section 28-101’s line-of-sight ordinance, such a holding would mean that
only those ordinances which do not contain internal cross-references to the permit
application process could be applied to adult arcades operating without a permit. 
Arcades such as AVM would then be vulnerable to prosecution only for operating
without a permit, for violations of construction ordinances, and for lighting
violations. Under such a scheme, AVM would remain immune from prosecution for
other infractions because it had chosen to operate without a permit. 
          Such a scheme would reward AVM for operating illegally by sheltering it from
the full spectrum of prosecution to which legally permitted adult arcades are exposed,
thus producing a windfall for arcades that chose to operate illegally by protecting
them from prosecution for operating improperly. We do not believe such a result is
logical, nor is it consistent with the goals expressed by the Houston City Council. 
Accordingly, we find that the State presented legally sufficient evidence to allow a
rational trier of fact to find that the ordinance in question, section 28-101, was
properly applied to appellant and imposed a duty upon appellant to maintain a line of
sight from the manager’s station into the arcade viewing booths.


 We overrule
appellant’s second point of error.
 
 
Conclusion
          We affirm the judgment of the trial court.




                                                             George C. Hanks, Jr.
                                                             Justice
Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.
Publish. Tex. R. App. P. 47.2(b).